**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LIBRA MAX,

          *Plaintiff,*

      v.

BARBARA H. URBACH LISSNER,

          *Defendant.*

Civil Action No. 1:22-cv-05070 (VEC)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS THE COMPLAINT**


**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, NY 10111-0100
Tel.: (212) 589-4200
Fax: (212) 589-4201

*Attorneys for Defendant Barbara H. Urbach*
*Lissner*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................1

RELEVANT FACTUAL BACKGROUND.....................................................................3

ARGUMENT .............................................................................................................9

I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION .......................9

        A.      *Rooker-Feldman* Doctrine .................................................................10

        B.      Domestic Relations Exception............................................................11

        C.      *Colorado River* Doctrine...................................................................13

        D.      *Younger* Abstention ..........................................................................15

II.     EVEN IF THIS COURT HAS SUJECT MATTER JURISDICTION, OR
        DECIDES NOT TO ABSTAIN, PLAINTIFF'S CLAIMS FAIL ....................17

        A.      MS. LISSNER HAS IMMUNITY....................................................17

        B.      PLAINIFF FAILS TO STATE A CLAIM .........................................18

                1.      Libra's Claim of Intentional Infliction of Emotional Distress Fails.........18

                2.      Libra's Judiciary Law 487 Claim Fails....................................20

                3.      Libra's Anti-SLAPP Claim Fails.............................................22

                        a.      New York Anti-SLAPP Cannot be Applied in Federal
                                Court .................................................................................22

                        b.      Even if Applying New York Anti-SLAPP is Permissible in
                                This Court, It is Inapplicable Here..................................24

CONCLUSION........................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abe v. New York Univ.*,
   No. 14-CV-9323, 2016 WL 1275661 (S.D.N.Y. Mar. 30, 2016) ...........................................13

*Ankenbrandt v. Richards*,
   504 U.S. 689 (1992)......................................................................................................................12

*APWU v. Potter*,
   343 F.3d 619 (2d Cir. 2003).........................................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................................18

*Bartolini v. Mongelli*,
   17-CV-6276, 2018 WL 6333827 (E.D.N.Y. Nov. 7, 2018), *R. & R. adopted as
   mod.*, 2018 WL 6338771 (E.D.N.Y. Dec. 4, 2018) ................................................................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................................18, 23

*Bender v. City of New York*,
   78 F.3d 787 (2d Cir. 1996)..........................................................................................................18

*In re Burrus*,
   136 U.S. 586 (1890).....................................................................................................................11

*Carrol v. Trump*,
   No. 20-cv-7311 (LAK), 2022 WL 748128 (S.D.N.Y. March 11, 2022) ..........................23, 24

*Chibcha Rest., Inc. v. David A. Kaminsky & Assocs., P.C.*,
   958 N.Y.S.2d 135 (1st Dept. 2013) ............................................................................................20

*Christ the King Regional High School v. Culvert*,
   815 F.2d 219 (2d Cir.), *cert. denied*, 484 U.S. 830 (1987)......................................................15

*Cleavinger v. Saxner*,
   474 U.S. 193 (1985).....................................................................................................................17

*Diamond "D" Const. Corp. v. McGowan*,
   282 F.3d 191 (2d Cir. 2002).........................................................................................................16

*Dorman v. Higgins*,
   821 F.2d 133 (2d Cir. 1987).........................................................................................................17

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005) ................................................................................................10

*Faraldo v. Kessler*,
   No. 08-CV-00261, 2008 WL 216608 (E.D.N.Y. Jan. 23, 2008) ...............................17

*Galanova v. Portnoy*,
   432 F. Supp. 3d 433 (S.D.N.Y. 2020) ........................................................9, 11, 17

*Gluckman v. American Airlines, Inc.*,
   844 F. Supp. 151 (S.D.N.Y. 1994) ..........................................................................19

*Haber v. Kisner*,
   680 N.Y.S.2d 233 (1st Dept. 1998) ..........................................................................21

*Hanna v. Plumer*,
   380 U.S. 460 (1965) .................................................................................................24

*Hoblock v. Albany Cty. Bd. of Elections*,
   422 F.3d 77 (2d Cir. 2005) .......................................................................................10

*Howell v. New York Post Co., Inc.*,
   81 N.Y.2d 115 (1993) ..........................................................................................18, 19

*Iacovacci v. Monticciolo*,
   No. 18-CV-7984, 2019 WL 2074584 (S.D.N.Y. May 9, 2019) ................................13

*Jacobs v. Houlihan*,
   3:06 CV 0459, 2006 WL 2604600 (N.D. Ind. Sept. 6, 2006) ...................................12

*Juidice v. Vail*,
   430 U.S. 327 (1977) .................................................................................................15

*Kamen v. Am. Tel. & Tel. Co.*,
   791 F.2d 1006 (2d Cir. 1986) ....................................................................................9

*Kesner v. Buhl*,
   20 Civ. 3454 (PAE), 2022 WL 718840 (S.D.N.Y. March 10, 2022) .......................23

*In re Kovler*,
   253 B.R. 592 (Bankr. S.D.N.Y. 2000) ......................................................................21

*La Liberte v. Reid*,
   966 F.3d 79 (2d Cir. 2020) ..................................................................................23, 24

*Mable Assets, LLC v. Rachmanov*,
   192 A.D.3d 998 (2d Dept. 2021) ..............................................................................22

iii

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)................................................................................................9

*Maldonado v. N.Y. Cnty. Sheriff*,
No. 05 Civ. 8377, 2006 WL 2588911 (S.D.N.Y. Sept. 6, 2006)...............................17

*Maron v. Legal Aid Society*,
21 Civ. 5960 (KPF), 2022 WL 1910247 (S.D.N.Y. June 2, 2022)..........................23

*Martin v. Citibank, N.A.*,
762 F.2d 212 (2d Cir. 1985)...............................................................................................19

*Mazur v. Woodson*,
932 F. Supp. 144 (E.D. Va. 1996) ...................................................................................12

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
386 F.3d 107 (2d Cir. 2004)................................................................................................9

*Nat'l Academy of Television Arts and Sciences, Inc. v. Multimedia System Design, Inc.*,
551 F. Supp. 3d 408 (S.D.N.Y. 2021).................................................................22, 23, 24

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
673 F.3d 84 (2d Cir. 2012).........................................................................................13, 14

*Northern Trust Bank of Florida/Sarasota N.A. v. Coleman*,
632 F. Supp. 648 (S.D.N.Y. 1986) ..................................................................................20

*Oakes v. Muka*,
868 N.Y.S.2d 796 (3d Dept. 2008) ..................................................................................21

*Pantheon Properties, Inc. v. Houston*,
20-CV-3241-ALC, 2021 WL 4523619 (S.D.N.Y. Sept. 30, 2021) .........................20

*Pappas Harris Capital, LLC v. Bregal Partners, L.P.*,
20-CV-6911 (VEC), 2021 WL 3173429 (S.D.N.Y. July 27, 2021), *appeal dismissed*, 21-2086, 2021 WL 7162177 (2d Cir. Sept. 29, 2021)...............13, 14, 15

*Paulucci v. Paulucci*,
605-CV-1264, 2006 WL 8439352 (M.D. Fla. Jan. 20, 2006)...................................12

*Perry v. Burger King Corp.*,
924 F. Supp. 548 (S.D.N.Y. 1996) ..................................................................................18

*Phillips v. Citibank, N.A.*,
252 F. Supp. 3d 289 (S.D.N.Y. 2017).............................................................................14

*Ponticelli v. Zurich Am. Ins. Grp.*,
   16 F. Supp. 2d 414 (S.D.N.Y.1998).............................................................................18

*Puletti v. Patel*,
   No. 05-cv-2293, 2006 WL 2010809 (E.D.N.Y. July 14, 2006)..................................11

*Schottel v. Kutyba*,
   No. 06-cv-1577, 2009 WL 230106 (2d Cir. Feb. 2, 2009) ........................................12

*Semper v. New York Methodist Hosp.*,
   786 F. Supp. 2d 566 (E.D.N.Y. 2011) .......................................................................20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)...................................................................................................24

*Tacopina v. Kerik*,
   No. 14-cv-749, 2016 WL 1268268 (S.D.N.Y. Mar. 31, 2016)..................................20

*Telesco v. Telesco Fuel & Masons' Materials, Inc.*,
   765 F.2d 356 (2d Cir. 1985).......................................................................................15

*Thomas v. New York City*,
   814 F. Supp. 1139 (E.D.N.Y. 1993) .....................................................................11, 15

*Toriola v. N. Shore LIJ*,
   09-CV-3251, 2009 WL 2338037 (E.D.N.Y. July 29, 2009)....................................9, 16

*Urias v. Daniel P. Buttafuoco & Assocs., PLLC*,
   104 N.Y.S.3d 712 (2d Dept. 2019) .............................................................................20

*Verdejo v. North Shore Assocs.*,
   No. 08–CV–1950, 2009 WL 1137748 (E.D.N.Y. Apr. 27, 2009)...............................9

*Vossbrinck v. Accredited Home Lenders, Inc.*,
   773 F.3d 423 (2d Cir. 2014)........................................................................................10

*Walker v. Schult*,
   717 F.3d 119 (2d Cir. 2013)........................................................................................18

*In re Whatley*,
   396 F. Supp. 2d 50 (D. Mass. 2005) ...........................................................................12

*Wilkinson v. Russell*,
   973 F. Supp. 437 (D. Vt. 1997)...................................................................................17

*Yak v. Bank Brussels Lambert*,
   No. 99 Civ. 12090, 2002 WL 31132963 (S.D.N.Y. 2002) ........................................21

*Yalkowsky v. Century Apts. Assocs.*,
    626 N.Y.S.2d 181 (1st Dept. 1995) ..........................................................20

*Yapi v. Kondratyeva*,
    340 F. App'x 683 (2d Cir. 2009) ...........................................................17

*Younger v. Harris*,
    401 U.S. 37 (1971)...............................................................................15

**Statutes**

Judiciary Law § 487 ............................................................................14, 20, 21

NY CRL § 70-a .............................................................................14, 22, 23, 24

NY CRL § 76-a ...........................................................................................14

**Rules**

CPLR 3111(g) ................................................................................................22

CPLR 3211(g)...........................................................................................22, 23

CPLR 3212(h)...............................................................................................23

Fed. R. Civ. P. 12 .....................................................................................23, 24

Fed. R. Civ. P. 12(b)(1)..........................................................................1, 9, 16

Fed. R. Civ. P. 12(b)(6).........................................................................1, 16, 18

Fed. R. Civ. P. 56 .........................................................................................23

Defendant Barbara H. Urbach Lissner submits this memorandum of law in support of her motion to dismiss the complaint filed by plaintiff, Libra Max ("Libra"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

This complaint is the latest salvo in an ongoing battle being waged by Libra against Ms. Lissner, the court-appointed guardian for Libra's father, the well-known artist Peter Max ("Peter"). This action does not arrive on a blank slate; the issues and allegations raised by Libra have been raised in the state court Guardianship Proceeding (defined below). Indeed, as Libra's complaint tacitly acknowledges, the only "relationship" between Libra and Ms. Lissner is through the guardianship. In the Guardianship Proceedings, Libra has employed at least 25 attorneys to attack Ms. Lissner. Four judges have presided over the Guardianship Proceeding and not one has ruled in Libra's favor.

Libra's complaint should be dismissed here for a number of reasons. *First*, under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction because this case is, in substance, an appeal of Libra's state court losses. *Second*, this Court also lacks jurisdiction under the domestic relations exception, which stands for the proposition that domestic disputes—including those related to custody and guardianship—belong in state court. *Third*, even if this Court has subject matter jurisdiction, it may abstain from exercising it under the *Younger* and *Colorado River* doctrines. *Fourth*, Ms. Lissner is a court-appointed guardian who has quasi-judicial immunity from liability related to her actions while executing her court-ordered duties. *Fifth*, Libra's complaint fails to state a claim with respect to each of the three counts.

As further detailed herein, Peter wanted an independent guardian appointed by the court because Libra, and her brother, Adam, do not get along. Libra has made several applications to the Guardianship Court to have Ms. Lissner removed and to end the guardianship. Those

applications were nearly identical to the Complaint here and were supported by the same affidavits. The Guardianship Court considered each of Libra's concerns and rejected Libra's applications. Moreover, Libra's applications have been opposed by every other stakeholder in the guardianship, including, Peter's lawyer (Elizabeth Adinolfi), Adam (Peter's son), and Peter's property guardian, Larry Flynn. Each has stated that Ms. Lissner has only made Peter's life better. Sadly, as Libra ultimately controls the finances, Ms. Lissner has not been paid for three years, despite caring for Peter and putting Peter's interests above her own.

After years of losses in Guardianship Court—which she could have appealed but did not—Libra took to the media. In 2021, Libra created the #freepetermax campaign. Through social media and TV appearances, Libra raised her claims (confined to the sealed Guardianship Proceeding) without discussing the court orders or the different views of everyone else involved. She accused Ms. Lissner of theft, lied about Ms. Lissner's activities, and called her a "nazi," "kiddnapper" and "human trafficker." Ms. Lissner and her husband practice elder law and have spent decades working for Holocaust survivors and families of Holocaust victims.

When her assault of incessant filings in the Guardianship Court and unrelenting publicity campaign did not result in Ms. Lissner's dismissal, Libra brought this case in state court on June 14, 2022. Almost immediately, that action was deemed related to and joined with the Guardianship Proceeding. The action was also sealed. This infuriated Libra, as this action was a key element of her media campaign against Ms. Lissner—at about 9:00 AM on the day the complaint was filed, Rolling Stone Magazine published a lengthy article quoting the complaint and repeating Libra's false claims. In response to the joinder with the Guardianship Proceeding, Libra dismissed the action and filed the same complaint here.

As indicated, this Court should dismiss this claim for lack of subject matter jurisdiction. Alternatively, this Court can dismiss for failure to state a claim. The intentional infliction of emotional distress ("IIED") claim fails because Ms. Lissner's conduct was court-sanctioned and not egregious. Nor was Ms. Lissner's conduct directed at Libra, which is detrimental to an IIED claim. The Judiciary Law claim fails because it must be brought in the court in which the alleged "lies" were made, here, the Guardianship Court. It also can only be brought against an attorney acting in her capacity of an attorney, not as here, as a personal needs guardian. Finally, the anti-SLAPP claim fails because New York's anti-SLAPP conflicts with federal law and cannot be brought in federal court. Libra also has failed to articulate how this private family dispute is a matter of public participation, especially when the Guardianship Court matter is sealed.

Libra's Complaint should be dismissed.

## RELEVANT FACTUAL BACKGROUND

In 2015, it was increasingly clear to Peter and his immediate family that his health was deteriorating, and he would need care for the remainder of his life. (*See* Declaration of Adam Max in support of Barbara Lissner's Motion to Dismiss, submitted contemporaneously herewith ("Max Decl.") ¶ 3.) Peter's now deceased wife, Mary Max, and friend George Whipple, Esq. commenced an Article 81 proceeding in New York Supreme Court, Index No. 500198/2015 (the "Guardianship Proceeding," or "Guardianship Court"), seeking to appoint Mr. Whipple as Peter's property guardian. (Declaration of Elizabeth A. Adinolfi in support of Barbara Lissner's Motion to Dismiss, submitted contemporaneously herewith ("Adinolfi Decl.") ¶ 5.) The Guardianship Court expanded the guardianship to include a personal needs guardian. (*Id.* ¶ 6.)

In September 2015, Elizabeth Adinolfi was appointed as Peter's counsel and Diane Krausz, Esq, was appointed as Peter's Temporary Property and Personal Needs Guardian. (*Id.*) Shortly thereafter, Ms. Krausz was replaced by Paul G. Mederos Esq. (*Id.* ¶ 7.) An *in camera*

*Lincoln* hearing was held on January 12, 2016, during which Peter acknowledged that he understood the guardianship proceeding, and consented to being designated a Person In Need of a Guardian ("PING") and to the appointment of an independent guardian for his personal needs and property management. (*Id.* ¶ 9.) Peter acknowledged that his children, Adam and Libra, could not serve as co-guardians because of their contentious relationship, including litigation against each other. (*Id.* ¶ 11; Max Decl. ¶ 4.) Libra's counsel did not object to the guardianship or to Peter's capacity to consent to his designation as a PING. (Adinolfi Decl. ¶ 10.)

With the exception of Libra, Peter's immediate family members and all parties involved in the guardianship have accepted that the guardianship is what is best for Peter. (Adinolfi Decl. ¶ 32(b)(ii); Max Decl. ¶ 5.) Libra has had serial disputes in the guardianship. This began with Mr. Mederos who resigned in October 2016. Mr. Mederos explained that he resigned due to the "sheer exhaustion Libra and Mary's concerted conduct caused me." (Declaration of Oren J. Warshavsky in support of Barbara Lissner's Motion to Dismiss, submitted contemporaneously herewith ("Warshavsky Decl.") ¶ 11 & Ex. H.) This included Libra's efforts to remove Mr. Mederos. (*Id.*) Libra's relationship with Mary also was tumultuous. (Adinolfi Decl. ¶ 25.)

On December 22, 2016, Judge Visitacion-Lewis issued the Order and Judgment setting out the terms of Peter's guardianship ("December 22 Order"). (*Id.* ¶ 13 & Ex. A.) Ms. Redlisky, Libra's counsel, helped draft the December 22 Order. At no point did Ms. Redlisky object to the creation of the guardianship or question Peter's capacity to consent to the Guardianship. (*Id.* ¶ 14.) The December 22 Order appointed Lawrence L. Flynn, Esq. as Peter's Property Guardian and Sabrina Morrisey, Esq. as Peter's Personal Needs Guardian. (*Id.* ¶ 15.) Ms. Morrissey resigned on May 4, 2018 and Ruth Lippin, Esq. was appointed as Peter's third Personal Needs Guardian on October 28, 2018. (*Id.* ¶ 16.) Ms. Lippin resigned in April 2019. (*Id.* ¶ 17.)

Mary, Mr. Flynn, Adam, and Libra all nominated Ms. Lissner as the successor Personal Needs Guardian. (*Id.* ¶ 18.) Before Ms. Lissner's appointment, however, Mary allowed a reporter for the New York Times into the apartment to interview Peter, resulting in a highly damaging article, *Dementia Stopped Peter Max From Painting. For Some, That Spelled a Lucrative Opportunity,* published on May 28, 2019, which referenced information only known to participants in the Guardianship Proceedings. (*Id.* ¶ 19.) In response, on June 3, 2019, the Court ordered that "counsel and individuals or facilities/agencies providing services to the guardianship estate are directed not to communicate with the media." (*Id.* ¶ 21 & Ex. C.)

On May 29, 2019, Justice Kennedy appointed Ms. Lissner as Peter's personal needs guardian noting that, after reviewing Ms. Lissner's "professional experience and credentials, . . . she would be able to meet all of [Peter's] personal needs." (*Id.* ¶¶ 19-20.) On June 9, 2019, Mary Max committed suicide. (*Id.* ¶ 22.) On June 10, 2019, Ms. Lissner was commissioned. (*Id.*)

Upon her appointment, Ms. Lissner enacted several necessary procedures and made adjustments to Peter's care, all of which occurred with court approval. (*Id.* ¶ 24.) In the wake of Mary's death and Ms. Lissner's commission, Libra began taking disruptive actions including sleeping in Peter's bed with him overnight, taking possession of Peter's phone and refusing to return it, and making demands of Peter's home health aides. (*Id.* ¶¶ 25-27.) In September 2019, Libra sought to have Ms. Lissner removed. (*Id.* ¶ 28.) On September 25, 2019, Justice Kennedy denied Libra's application. (*Id.*) Justice Kennedy found that Peter is a PING and absent his objection or withdrawal of consent to the guardianship, the guardianship remains in place with Ms. Lissner as the guardian. (*Id.* & Ex. D.) The Court also found that Peter "did not express any request to terminate this guardianship; was 'very fond' of the present guardian [Ms. Lissner]; and satisfied with Ms. Lissner's performance." (*Id.* ¶ 29 & Ex. E; *see also* Max Decl. ¶ 6.)

The Court's finding did not impact Libra. Since 2019, Libra has raised issues before the Guardianship Court virtually on a daily basis. (Adinolfi Decl. ¶ 30; Max Decl. ¶ 8.) Libra has, by this point, been represented by at least 25 lawyers, all of whom make applications to the Court which (because they often contain false information) require responses from: Ms. Adinolfi, as counsel to Peter; Ms. Lissner; Ms. Lissner's counsel; Adam Max; and Larry Flynn, the property guardian. (Adinolfi Decl. ¶ 30; Max Decl. ¶ 10.) Ms. Lissner and her attorney have not been paid since 2019. Worse still, due to Libra's actions, Ms. Lissner's role as Peter's Personal Needs Guardian has become a near full-time job. (Adinolfi Decl. ¶ 30; Max Decl. ¶ 11.)

Libra's applications to the Guardianship Court raise arguments identical to those in the Complaint. (Adinolfi Decl. ¶ 31.) Each argument was considered and rejected by the Court. (*Id.*) The most comprehensive decision was issued on August 7, 2020 by Justice Kelly (Justice Kennedy's successor), denying Libra's motion to remove Ms. Lissner and terminate the guardianship. (*Id*. & Ex. F.) In it, Libra sought to remove Ms. Lissner, arguing that "Ms. Lissner has failed to act in [Peter's] best interests by not allowing him the greatest amount of independence and self-determination of which he is capable in three main ways: (1) by failing to consult with L[ibra] regarding [Peter's] medical decisions; (2) by isolating [Peter] from his family and friends; and (3) by limiting L[ibra]'s contact with [Peter]." (*Id.*)

As part of the comprehensive August 7, 2020 decision, and through other rulings, the Guardianship Court addressed the same allegations Libra makes in her Complaint here. In response to Libra's allegations concerning the removal of Peter's cats, the Guardianship Court found that Ms. Lissner consulted Ms. Adinolfi and that the decision was in Peter's best interest, because the cats were a health and tripping hazard. (*Id.* ¶ 35.) Remarkably, Libra took custody of the cats (a fact she fails to mention). (*Id.*) With respect to Libra's allegations concerning Peter's

visitation schedule with family members, each schedule was approved by the Guardianship Court and Libra was directed to comply with the schedule, which the Court found within Peter's best interest. (*Id.* ¶ 34.) The Guardianship Court rejected Libra's allegation that Ms. Lissner was isolating Peter from friends and loved ones and treating him inhumanly, explaining that "[a]ll the parties, except for L[ibra], agree that Ms. Lissner has improved [Peter's] life greatly." (*Id.* ¶ 32.) In response to Libra's complaint that she is not consulted about Peter's medical care, the Guardianship Court found that Ms. Lissner fully complied with Guardianship Order. (*Id.* ¶ 33.) In response to Libra's allegation that Peter should be cared for by his children, not a guardian, the Guardianship Court found that: (i) Peter did not withdraw his consent and "[t]o allow L[ibra] to vitiate [Peter's] consent would clearly be inconsistent with his personal wishes, preferences and desires and would deny him any amount of independence and self-determination" and (ii) in her thinly veiled attempt to become Peter's caretaker "L[ibra] ignores the fact that [Peter] himself objected to having L[ibra] appointed as his guardian, that he was found to have the capacity to consent and in fact did consent to having a personal needs guardian appointed by the court." (*Id.* ¶ 37.) Finally, in response to Libra's allegation that Ms. Lissner took away Peter's phone, it was in fact Libra who took Peter's phone and, despite a Court Order that she turn the phone over to Mr. Flynn, Libra has still refused to do so. (*Id.* ¶ 36.) While Libra filed a notice of appeal of Judge Kelly's August 7, 2020 decision, it was never perfected. (*Id.* ¶ 31.)

Instead of pursuing proper legal channels, and without regard for Peter's privacy, Libra turned this private family matter public to intimidate Ms. Lissner and others. (*Id.* ¶¶ 38-39; Max Decl. ¶ 9.) In 2021, Libra launched the "#freepetermax" and "#SavePeterMax" campaigns. (Adinolfi Decl. ¶ 42.) Libra created a website, posted on major social media sites, met with reporters, and made television appearances. (*Id.*) Through each form of media, Libra made false

statements about Ms. Lissner's and Mr. Flynn's care of her father. (*Id.* ¶ 43.) And in early November 2021, Libra planned and held a rally outside Ms. Adinolfi's office. (*Id.* ¶ 44.) Libra's intent was to "shame" Ms. Adinolfi's law firm into "doing the right thing." (*Id.*)

With permission of the Guardianship Court (Justice Sharpe, replacing Justice Kelly), Ms. Lissner brought a state court action against Libra, and Edward Tricomi, Libra's friend, for defamation (the "Defamation Action."). (Warshavsky Decl. ¶ 3.) Ms. Lissner's complaint addresses public statements by Libra and Mr. Tricomi, including during an October 13, 2021 television interview on "Good Day New York." (*Id.* Ex. A) The Complaint notes Libra's and Tricomi's statements that Peter is "isolated," that Ms. Lissner "took away his phone," that Libra is not allowed "inside her childhood home," that this is "legal kidnapping," that the guardians have "helped themselves to [Peter's] bank accounts," and that Ms. Lissner's guardianship "is a human rights violation." (*Id.* ¶ 3, 6, 30, 52, 56, 60, 62, 64.) Libra filed an Answer in the Defamation Action on February 4, 2022. (*Id.* ¶ 4 & Ex. B.) On July 6, 2022, Judge Adam Silvera, *sua sponte*, issued an Order that the Defamation Action is related to and should be joined with the Guardianship Proceeding in New York Supreme Court before Judge Sokoloff; and that the file and records in the Defamation Action are to be sealed. (*Id.* ¶ 5 & Ex. C.)

Libra also took another tack. As things were not going well for Libra with Justice Sharpe—just as they had not been going well for Libra with Justices Kennedy and Kelly—Libra's team reached out to the law firm of Justice Sharpe's husband to join her team. Of course, this resulted in Justice Sharpe being forced to recuse herself. (*Id.* ¶ 12 & Ex. I.) The new judge on the case is Justice Sokoloff.

On the morning of June 14, 2022, Libra filed a complaint against Ms. Lissner in New York Supreme Court ("State Court Action"). (*Id.* ¶ 6 & Ex D.) That same day, at 9:08 AM, an

article was published in Rolling Stone Magazine that discusses Libra's State Court Action, details the Complaint, and includes statements from Libra. (*Id.* ¶ 7 & Ex. E.) On June 16, 2022, Judge Adam Silvera, *sua sponte*, issued an Order that: (1) found the State Court Action as related to the Guardianship Proceeding; (2) joined the State Court Action with the Guardianship Proceeding; and (3) sealed the file and records in the State Court Action. (*Id.* ¶ 8 & Ex. F.) On June 16, 2022, Libra filed a Notice of Discontinuance in the State Court Action. (*Id.* ¶ 9 & Ex. G.) She filed this action the same day. (*Id.* ¶ 10.)

## ARGUMENT

I. ## THIS COURT LACKS SUBJECT MATTER JURISDICTION

Under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). While courts generally must accept the material factual allegations in the complaint as true, they *do not* draw all reasonable inferences in the plaintiff's favor. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). Where jurisdictional facts are disputed, the Court must consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. *Galanova v. Portnoy*, 432 F. Supp. 3d 433, 438-39 (S.D.N.Y. 2020) (citing *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

A cursory review of Libra's Complaint reveals her attempt to have this Court re-evaluate arguments and evidence she already put before the Guardianship Court, all of which have been ruled upon by that court. When an action brought before the federal court is a review of guardianship proceedings, the court does not have jurisdiction over that claim. *See Toriola v. N. Shore LIJ*, 09-CV-3251, 2009 WL 2338037, at *2 (E.D.N.Y. July 29, 2009); *see also Verdejo v. North Shore Assocs.*, No. 08–CV–1950, 2009 WL 1137748, at *1 (E.D.N.Y. Apr. 27, 2009) (the

remedy for reversing a guardianship order is in state court appellate procedures). This Court therefore lacks subject matter jurisdiction over this case.

Furthermore, this Court either lacks subject matter jurisdiction over this case, or should abstain from exercising it, under the *Rooker-Feldman* doctrine, the domestic relations exception, *Younger*, and *Colorado River*. Whether this Court considers all doctrines, or focuses on just one, the result in each instance leads to dismissal of Libra's Complaint in its entirety.

A.    ***Rooker-Feldman* Doctrine**

The *Rooker-Feldman* doctrine provides that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). "The doctrine is rooted in the principle that 'appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court.'" *Vossbrinck v. Accredited Home Lenders, Inc*., 773 F.3d 423, 426 (2d Cir. 2014) (citing *Exxon Mobil*, 544 U.S. at 283). The *Rooker-Feldman* doctrine has four requirements: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries from a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced. *See Vossbrinck*, 773 F.3d at 426 (citing *Hoblock*, 422 F.3d at 85).

Dressing up a purported injury as a claim against a third party when that purported injury was the consequence of a state court order, does not transform it into an independent claim. As the Second Circuit posited: "Can a federal plaintiff avoid *Rooker–Feldman* simply by clever pleading—by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself? Surely not." *Hoblock*, 422 F.3d at 88.

Libra's Complaint meets the requirements of the *Rooker-Feldman* doctrine. Her claims, while dressed up as claims against Ms. Lissner, are simply a recitation of complaints she lodged in the Guardianship Court to terminate the guardianship and remove Ms. Lissner. Libra's Complaint is largely dedicated to allegations about Ms. Lissner's purported improper treatment of Peter. (*See e.g.*, Compl. ¶¶ 2, 3, 5, 7, 10, 14, 15, 17, 19, 27, 28, 29, 47, 64, 65, 68(f) (g) (r), 72, 75, 77, 78, 82, 88, 89, 90.) This includes allegations that Ms. Lissner removed Peter's cats (*id*. ¶¶ 20, 68(k)), and took away his telephone. (*Id.* ¶¶ 68(l)-(n).) Libra also complains about limitations on access to Peter's medical information, (*id.* ¶¶ 32, 33, 34, 46, 83, 84, 85, 86, 93, 94), visitation, and daily schedules. (*Id.* ¶¶ 21, 68(b),(c), (t), 70.) Each argument was made before the Guardianship Court and rejected—including in a comprehensive decision issued on August 7, 2020. (Adinolfi Decl. ¶¶ 30-37.) Libra filed a notice of appeal from the August 7 Decision; however, the appeal was never perfected.

By putting before this Court the same allegations considered by the Guardianship Court and rejected, Libra improperly uses this Court to, in substance, appeal from all the orders decided against her. *See Galanova*, 432 F. Supp. 3d 433, 438-39 (applying the *Rooker-Feldman* doctrine in a guardianship case, wherein plaintiff sought to relitigate the same issues that she raised and lost in state court). This Court therefore lacks jurisdiction over this suit.

B.     <u>**Domestic Relations Exception**</u>

"The . . . Supreme Court[] has long recognized that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Puletti v. Patel*, No. 05-cv-2293, 2006 WL 2010809, at *4 (E.D.N.Y. July 14, 2006) (citing *In re Burrus*, 136 U.S. 586, 593–94 (1890)). "The domestic relations exception to federal subject matter jurisdiction is based on the policy consideration" that federal courts lack the "competence and expertise in adjudicating such matters." *Thomas v. New York*

*City*, 814 F. Supp. 1139 (E.D.N.Y. 1993) (citing *Ankenbrandt v. Richards*, 504 U.S. 689 (1992)). The domestic relationship exception applies equally to adult guardianship cases which are analogous to, for example, child custody cases. *See Mazur v. Woodson*, 932 F. Supp. 144, 148-49 (E.D. Va. 1996); *In re Whatley*, 396 F. Supp. 2d 50, 58 (D. Mass. 2005); *Paulucci v. Paulucci*, 605-CV-1264, 2006 WL 8439352, at *3 (M.D. Fla. Jan. 20, 2006); *Jacobs v. Houlihan*, 3:06 CV 0459, 2006 WL 2604600, at *2 (N.D. Ind. Sept. 6, 2006).

It is irrelevant that Libra's claims are disguised as tort claims. In *Schottel v. Kutyba*, No. 06-cv-1577, 2009 WL 230106 (2d Cir. Feb. 2, 2009), the plaintiff alleged fraud and coercion in divorce proceedings that deprived her of custody and visitation. *Id.* at *1. The Second Circuit explained that the claims were "at heart, a dispute surrounding the custody of [plaintiff's] child." *Id.* The court reasoned that "a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages." *Id.* Regardless of how styled, the Court is deprived of jurisdiction over claims that "begin and end in a domestic dispute."

Libra's claims, at heart, are a dispute surrounding the custody of Peter. Libra so states in the Complaint. (Compl. ¶ 39 ("With the suicide of Peter's wife in June 2019, the need for the guardianship ended. At that time, Peter should have been afforded his clearly stated wishes to be cared for by his children at the end of his life . . . and to have his children make medical decisions for him to the extent he is unable"); *see also* ¶¶ 44, 68(a).) Libra raised this same point with the Guardianship Court, and lost. (*See* Adinolfi Decl. ¶¶ 33, 37 ("L[ibra] ignores the fact that [Peter] himself objected to having L[ibra] appointed as his guardian, . . . [and that he] consent[ed] to having a personal needs guardian appointed by the court."). Libra has taken this domestic, guardianship dispute to federal court, where it does not belong. Under the domestic relations exception, this Court lacks jurisdiction to hear this case.

C.   *Colorado River* **Doctrine**

There are also instances where a claim properly brought in federal court still requires

abstention. Under the *Colorado River* doctrine, this Court should abstain from exercising

jurisdiction over each of Libra's claims if they are not otherwise dismissed. To conserve judicial

resources, the *Colorado River* doctrine empowers federal courts to abstain from exercising

subject matter jurisdiction "'when substantially the same parties are contemporaneously

litigating substantially the same issue[s] in another forum.'" *Pappas Harris Capital, LLC v.*

*Bregal Partners, L.P.*, 20-CV-6911 (VEC), 2021 WL 3173429, at *3 (S.D.N.Y. July 27, 2021),

*appeal dismissed*, 21-2086, 2021 WL 7162177 (2d Cir. Sept. 29, 2021) (citing *Niagara Mohawk*

*Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012)).

"To determine whether abstention is appropriate pursuant to *Colorado River*, courts conduct a

two-step assessment: first, the court must determine whether the state and federal cases are

parallel; second, the court must weigh six factors to determine whether exceptional

circumstances warrant abstention. *Id.* (citing *Niagara Mohawk*, 673 F.3d at 100).

"Federal and state proceedings are parallel if 'substantially the same parties are

contemporaneously litigating substantially the same issue[s]' in both forums." *Iacovacci v.*

*Monticciolo*, No. 18-CV-7984, 2019 WL 2074584, at *3 (S.D.N.Y. May 9, 2019). "Complete

identity of claims is not required . . . federal courts have abstained when faced with a federal case

that includes a claim or claims not in the state case, when the state case claims involve the same

factual allegations as those at issue in the federal case." *Pappas*, 2021 WL 3173429, at *3 (citing

*Iacovacci*, 2019 WL 2074584, at *5; *Abe v. New York Univ.*, No. 14-CV-9323, 2016 WL

1275661, at *6 (S.D.N.Y. Mar. 30, 2016)). There is no question that Libra's NY anti-SLAPP

claim is a parallel proceeding. Libra and Ms. Lissner are parties in both actions. Libra asserted

NY anti-SLAPP as an affirmative defense in the Defamation Action, stating:

> Ms. Lissner's claim is barred based upon New York's anti-SLAPP law,
> including, without limitation, sections 70-a and 76-a of the New York Civil
> Rights Law, including but not limited to because Ms. Lissner's Complaint is an
> action involving public petition and participation and Libra acted without
> malice or a reckless disregard for the truth.

(*See* Warshavsky Decl. ¶ 4, Ex. B at 10, Fourth Defense.) Although Libra's other claims are

styled as IIED and Judiciary Law § 487 claims, her prior claims in the Guardianship Proceeding

"involve the same factual allegations as those at issue in the federal case." *Pappas*, 2021 WL

3173429, at *3. These claims are also parallel proceedings to the Guardianship Proceeding.

Upon a determination that relevant proceedings are parallel, courts apply the following

six factors to determine whether abstention is proper:

> (1) whether the controversy involves a res over which one of the
> courts has assumed jurisdiction; (2) whether the federal forum is
> less inconvenient than the other for the parties; (3) whether staying
> or dismissing the federal action will avoid piecemeal litigation; (4)
> the order in which the actions were filed, and whether proceedings
> have advanced more in one forum than in the other; (5) whether
> federal law provides the rule of decision; and (6) whether the state
> procedures are adequate to protect the plaintiff's federal rights.

*Niagara Mohawk*, 673 F.3d at 100-01.

(1)     Because there is no res here, the first factor is neutral.

(2)     The federal forum here is not "less inconvenient" than the state forum. Both courts are in

New York, NY, and the parties have appeared in both courts. Moreover, the

Guardianship Proceeding can only proceed in state court. This factor favors abstention.

(3)     Dismissing this action will avoid piecemeal litigation. "This factor is the most critical,

particularly because duplicative litigation cause[s] friction between state and federal

courts, which should be avoided." *Pappas*, 2021 WL 3173429, at *11 (internal citations

omitted); *see also Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 299-300 (S.D.N.Y.

2017) ("The danger of piecemeal litigation is the paramount consideration . . . due in part

to the possibility of inconsistent disposition of the claims.") Because anti-SLAPP is raised in both courts, there is certainly a possibility of inconsistent dispositions. With respect to the IIED and the Judiciary Law claims, the Guardianship Court has already ruled on the allegations underlying these claims, and there is the potential for inconsistent dispositions. This factor favors abstention.

(4)      When "[t]he federal suit, ... like that in *Colorado River*, has not moved beyond the initial pleadings and the motion to dismiss . . . it hardly seems wise to permit plaintiff to start anew in federal court." *Pappas*, 2021 WL 3173429, at *11 (citing *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985)). Because this case has not moved beyond the initial pleadings, this factor favors abstention.

(5)      This case involves only state law; therefore, this factor favors abstention.

(6)      There is no federal right to protect here. This factor also favors abstention.

Accordingly, this Court should dismiss Libra's claims under the *Colorado River* doctrine.

### D.      *Younger* **Abstention**

*Younger* offers another basis for abstention. "Under principles of comity and federalism, a federal court must, in certain circumstances, decline to adjudicate a case properly before it." *Thomas*, at 1149 (citing *Younger v. Harris*, 401 U.S. 37, 43–45 (1971)); *Juidice v. Vail*, 430 U.S. 327, 334 (1977). The Second Circuit has established a three-part test for applying *Younger* abstention: (1) whether a state proceeding is pending at the time the federal litigation is commenced, (2) the magnitude of the state's interest in adjudicating the matter, and (3) whether the plaintiffs are able to raise the same claims raised in the federal action in the state forum. *Id.* (citing *Christ the King Regional High School v. Culvert*, 815 F.2d 219, 224 (2d Cir.), *cert. denied*, 484 U.S. 830 (1987)).

"Under the *Younger* abstention doctrine, federal courts generally must abstain from adjudicating federal claims that 'involve or call into question ongoing state proceedings'"—such as guardianship proceedings. *Toriola v. N. Shore LIJ*, 09-CV-3251, 2009 WL 2338037, at *2 (E.D.N.Y. July 29, 2009) (citing *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002)) (Abstaining from intervention in a pending state court proceeding to challenge a guardianship because "this court would not be able to vacate a decision entered by a judge of another court or otherwise intervene in any state court proceedings as this court does not have appellate review over the state courts."). Although Libra's claims are not properly before this Court, nor do they plausibly state a claim under Federal Rule of Civil Procedure 12(b)(6) as discussed below, were they to be considered as such, this Court should abstain from adjudicating this case. The Complaint does nothing more than call into question ongoing state proceedings.

At the very least this Court should abstain from adjudicating the anti-SLAPP and Judiciary Law claims. The Defamation Action and Guardianship Proceeding are pending state proceedings, which have now been joined as related. As noted, Libra asserted NY anti-SLAPP as an affirmative defense in the Defamation Action. By also asserting this claim here, Libra not only asks this Court to grant the same relief but asks this Court to effectively find that the Defamation Action be dismissed. It is an obvious point that a federal court cannot rule on a claim not before it. Applying *Younger* here, it is clear that this Court may not "involve or call into question" the ongoing state Defamation Action. *See Toriola*, 2009 WL 2338037, at *2. Therefore, if this Court does not dismiss the NY anti-SLAPP claims outright under Federal Rules 12(b)(1) or 12(b)(6), it must abstain from adjudicating the claim on the merits. Likewise with the Judiciary Claim. Not only is it a state law which the New York State Court has a greater interest in adjudicating, but a Judiciary Law claim may only be raised in the Guardianship Proceeding.

II.   **EVEN IF THIS COURT HAS SUJECT MATTER JURISDICTION, OR DECIDES NOT TO ABSTAIN, PLAINTIFF'S CLAIMS FAIL**

A.   **MS. LISSNER HAS IMMUNITY**

Court-appointed guardians, like Ms. Lissner, are entitled to quasi-judicial immunity because at all times, they act "as an adjunct of the New York state judicial system." *Galanova v. Portnoy*, 432 F. Supp. 3d 433, 445-46 n.12 (S.D.N.Y. 2020) (immunity applies to guardian appointed in an Article 81 proceeding); *see also Faraldo v. Kessler*, No. 08-CV-00261, 2008 WL 216608, at *5 (E.D.N.Y. Jan. 23, 2008) (absolute immunity applies to Article 81 court-appointed evaluator for fulfilling a quasi-judicial role); *Yapi v. Kondratyeva*, 340 F. App'x 683, 685 (2d Cir. 2009) (guardian entitled to quasi-judicial immunity for alleged injuries arising from family-court proceedings); *Bartolini v. Mongelli*, 17-CV-6276, 2018 WL 6333827, at *11 (E.D.N.Y. Nov. 7, 2018), *R. & R. adopted as mod.*, 2018 WL 6338771 (E.D.N.Y. Dec. 4, 2018) (New York law controls and quasi-judicial immunity protects court-appointed guardians).

Officials who perform functions closely associated with the judicial process are, like judges, accorded absolute immunity. *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). Because the function performed is deemed integral to the judicial process, "persons who faithfully execute valid court orders are absolutely immune from liability for damages in actions challenging conduct authorized by the order." *Wilkinson v. Russell*, 973 F. Supp. 437, 440 (D. Vt. 1997) (citations omitted); *see also Maldonado v. N.Y. Cnty. Sheriff*, No. 05 Civ. 8377, 2006 WL 2588911, at *5-6 (S.D.N.Y. Sept. 6, 2006) ("in acting pursuant to a court order, the defendants were protected from liability by quasi-judicial immunity.").

Libra's complaint is nothing more than a compilation of complaints directed at Ms. Lissner's performance as a court-appointed guardian. Ms. Lissner is immune from liability from actions stemming from her appointment and performed in faithful execution of court orders.

### B.   PLAINIFF FAILS TO STATE A CLAIM

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a court examining the legal sufficiency of a complaint must construe it in the light most favorable to a plaintiff, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013), this requirement does not apply to "bare assertions," "legal conclusions," or "unwarranted factual inferences." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly,* 550 U.S. at 555).

### 1.   *Libra's Claim of Intentional Infliction of Emotional Distress Fails*

The tort of IIED has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993). "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citations omitted). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell*, 81 N.Y.2d at 122. "The standard for extreme and outrageous conduct is extremely difficult to satisfy." *Ponticelli v. Zurich Am. Ins. Grp.*, 16 F. Supp. 2d 414, 440 (S.D.N.Y.1998); *see also Perry v. Burger King Corp.*, 924 F.

Supp. 548, 553 (S.D.N.Y. 1996). In fact, in *Howell*, the New York Court of Appeals acknowledged that every IIED claim it has considered has failed "because the alleged conduct was not sufficiently outrageous." 81 N.Y.2d at 122.

Conduct sanctioned by a court cannot possibly be extreme and outrageous such that it exceeds the bounds of decency. Libra complains of "emotional pain," "grief" "anxiety," "chest pain" and "insomnia" from her lack of access to her father (Compl. ¶¶ 31, 79-80); from being deprived of his medical information (*id.* ¶ 46); and from her "race to free her father" from Ms. Lissner's purported "abuse." (*Id.* ¶¶ 47, 91.) These concerns were raised with the Guardianship Court, which found that Ms. Lissner has acted reasonably and appropriately. (Adinolfi Decl. ¶¶ 32-37.) The Guardianship Court found that limited, scheduled visitation is in Peter's best interest (Adinolfi Decl. ¶ 34) ("The guardian has a duty to act in the best interests of [Peter], not for the convenience of Libra"); that Ms. Lissner appropriately consults with Peter's children about his medical care (*id.* ¶ 33) and has rejected Libra's applications to terminate the guardianship. (*Id.* ¶ 37.) Moreover, every other stakeholder involved, including Peter's lawyer, his property guardian and, importantly, his son, feels that Ms. Lissner has only made Peter's life better. (*See* Max Decl. ¶¶ 6-7.) Ms. Lissner's actions are therefore neither extreme nor outrageous.

Further, Libra fails to plead that Ms. Lissner "intended" to cause her emotional distress. Libra's alleged injury is only a byproduct of Ms. Lissner's actions in the guardianship directed at Peter. (*See* Compl. ¶¶ 31, 46-47, 79-80, 91.) Courts applying New York law have adhered to the well-founded principle that a person cannot recover for IIED unless the allegedly offensive conduct was directed at him, as opposed to a third party. *See Martin v Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (conduct must be "intentionally directed at the plaintiff and lack any reasonable justification."); *see also Gluckman v. American Airlines, Inc.*, 844 F. Supp. 151, 157

(S.D.N.Y.1994) (Gluckman could not recover on an IIED claim from American Airlines for causing his dog's death); *Pantheon Properties, Inc. v. Houston*, 20-CV-3241-ALC, 2021 WL 4523619, at \*4 (S.D.N.Y. Sept. 30, 2021); *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 588 (E.D.N.Y. 2011). Not only was Barbara's conduct directed at Peter, but it was also reasonable and justifiable, and approved by the Guardianship Court. Libra's IIED claim fails.

2.     *Libra's Judiciary Law 487 Claim Fails*

Libra's claim under Judiciary Law § 487 accuses Ms. Lissner of "lying to the [guardianship] court as an attorney." (Compl. ¶ 1; *see also* Compl. ¶¶ 103-06.) Although as set forth herein, Plaintiff's allegations could not be further from the truth, the Court need not examine their veracity. Plaintiff's claim under Judiciary Law § 487 fails as a matter of law.

*First*, when a section 487 violation is premised on an attorney's misrepresentations to a court in a litigation, the remedy "lies exclusively in that lawsuit itself . . . not [by filing] a second plenary action collaterally attacking the judgment in the original action." *Yalkowsky v. Century Apts. Assocs.*, 626 N.Y.S.2d 181, 182-53 (1st Dept. 1995); *see also Chibcha Rest., Inc. v. David A. Kaminsky & Assocs., P.C.*, 958 N.Y.S.2d 135, 137 (1st Dept. 2013); *Urias v. Daniel P. Buttafuoco & Assocs., PLLC*, 104 N.Y.S.3d 712, 714 (2d Dept. 2019). Libra raised her concerns with the Guardianship Court on no less than three occasions, and the Guardianship Court disagreed. The Guardianship Proceeding is still ongoing, which allows Libra to raise her concerns there. She does not have the right to raise those concerns here.

*Second*, section 487 can only be invoked in cases of alleged deceit by an attorney while acting in his/her capacity as an attorney. *See Tacopina v. Kerik*, No. 14-cv-749, 2016 WL 1268268, at \*5 (S.D.N.Y. Mar. 31, 2016) ("'Section 487 is aimed at actions by an attorney in his or her role <u>as an attorney</u>. The mere fact that a wrongdoer is an attorney is insufficient to impose liability for treble damages under Section 487.'") (quoting *Northern Trust Bank of*

*Florida/Sarasota N.A. v. Coleman*, 632 F. Supp. 648, 650 (S.D.N.Y. 1986)); *see also Yak v. Bank Brussels Lambert*, No. 99 Civ. 12090, 2002 WL 31132963, at * (S.D.N.Y. 2002) (same). Although Libra alleges that Ms. Lissner "tout[ed] to the guardianship court that she is an attorney" and used "her law firm's resources in connection with the guardianship matter" (Compl. ¶¶ 103, 105), that does not change the fact that she was not acting as an attorney. She was appointed as Peter's personal needs guardian and was represented by her own counsel in the Guardianship Proceeding. (Compl. ¶ 63 ("Lissner received her commission to act as Peter's personal needs guardian . . . [on] June 10, 2019); Compl. ¶ 104 (Lissner "was not counsel of record in the guardianship court")); *See In re Kovler*, 253 B.R. 592, 604 (Bankr. S.D.N.Y. 2000) (Court, *sua sponte*, dismissed a § 487 claim against an attorney for a fraudulent conveyance, despite the fact that the attorney acted in his capacity as attorney in other aspects of the lawsuit); *Haber v. Kisner*, 680 N.Y.S.2d 233, 234 (1st Dept. 1998) ("Judiciary Law § 487 was properly dismissed since defendant was sued in the foreclosure action as trustee, and responded in that capacity"). Ms. Lissner was represented by Mr. Dan Fish in the Guardianship Proceeding who made all the legal submissions and arguments on her behalf. (Adinolfi Decl. ¶ 30); *Oakes v Muka*, 868 N.Y.S.2d 796, 798 (3d Dept. 2008) (Judiciary Law § 487 "applies to an attorney acting in his or her capacity as an attorney, not to a party who is represented by counsel and who, incidentally, is an attorney. Here, plaintiff, a licensed attorney in Texas, has been represented by counsel at all stages of this litigation and has not acted in her capacity as an attorney.") (internal citations omitted). Libra's claim under Judiciary Law § 487 should be dismissed.

3.       *Libra's Anti-SLAPP Claim Fails*

Libra's anti-SLAPP[1] claim is improperly brought here and must be dismissed. New

York's anti-SLAPP cannot be applied in federal court because its procedural nature inherently

conflicts with the Federal Rules. Even were the Court to find that anti-SLAPP was appropriately

raised here, Libra does not make the threshold showing that it applies in these circumstances.

###### a.       **New York Anti-SLAPP Cannot be Applied in Federal Court**

New York enacted laws, known as "anti-SLAPP," "aimed at broadening the protection of

citizens facing litigation arising from their public petition and participation." *Nat'l Academy of*

*Television Arts and Sciences, Inc. v. Multimedia System Design, Inc.*, 551 F. Supp. 3d 408, 430

(S.D.N.Y. 2021) (quoting *Mable Assets, LLC v. Rachmanov*, 192 A.D.3d 998 (2d Dept. 2021)).

Anti-SLAPP provides that in an action, such as one for defamation, involving a public petition

and participation, a defendant may bring a responsive claim to recover costs and attorney's fees:

> upon a demonstration, including an adjudication pursuant to subdivision (g) of
> rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred
> twelve of the civil practice law and rules, that the action involving public
> petition and participation was commenced or continued without a substantial
> basis in fact and law and could not be supported by a substantial argument for
> the extension, modification or reversal of existing law.

NY CRL § 70-a. CPLR 3211(g), referenced in NY CRL § 70-a, and incorporated into NY anti-

SLAPP laws, requires that a motion to dismiss in these circumstances must be granted, unless, at

the pleading stage, the plaintiff demonstrates "that the cause of action has a substantial basis in

law or is supported by a substantial argument for an extension, modification or reversal of

existing law." NY CPLR 3111(g).

---

[1] The term "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation."

As this Court recently found in *National Academy*, NY anti-SLAPP cannot be applied in federal court because it conflicts with federal procedure. 551 F. Supp. 3d at 430-31. Subsequent decisions have applied this same holding. *See Kesner v. Buhl*, 20 Civ. 3454 (PAE), 2022 WL 718840, at *17 (S.D.N.Y. March 10, 2022) ("This Court finds Judge Caproni's analysis as to why the § 70-a standard cannot be applied in diversity actions to be well-reasoned and clearly correct, and adopts it here."); *Carrol v. Trump*, No. 20-cv-7311 (LAK), 2022 WL 748128, at *7 (S.D.N.Y. March 11, 2022) ("One of my colleagues already has applied *La Liberte* to find a conflict between the Federal Rules 12 and 56, on the one hand, and amended Section 70-a of the New York anti-SLAPP statute and, implicitly, amended CPLR 3211(g) and 3212(h). In *Nat['l] Academy* . . . she ruled that '[Section] 70-a is inapplicable in federal court' because its 'substantial basis' standard ... conflicts with the standards under Federal Rules of Civil Procedure 12 and 56.' I agree with her analysis, which is dispositive as to Section 70-a."); *Maron v. Legal Aid Society*, 21 Civ. 5960 (KPF), 2022 WL 1910247, at *12 n.11 (S.D.N.Y. June 2, 2022).

Under Federal Rule of Civil Procedure 12, a claim may not be dismissed if the pleading alleges "enough facts to state a claim to relief that is plausible on its face" and places the burden on the defendant to show the test has not been satisfied. *Twombly*, 550 U.S. at 570. Yet, NY CRL § 70-a, shifts the burden of proof from the defendant to the plaintiff, heightens the dismissal standard by requiring that a claim for defamation have "a substantial basis in fact and law" and points to CPLR 3211(g) as the standard for dismissal. As a result, federal rule and state law are at odds with each other, with New York's anti-SLAPP law imposing "a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure." *Nat'l Academy,* 551 F. Supp. 3d at 430. In *National Academy* this Court relied on *La Liberte* which considered a California anti-SLAPP claim brought in this Court. *Id.*; *La Liberte v. Reid*, 966 F.3d

79, 87 (2d Cir. 2020). *La Liberte* pointed to the *Erie Doctrine* which directs that if a Federal Rule answers the same question as a state law, the Federal Rule must govern in federal court.[2] *Nat'l Academy,* 551 F. Supp. 3d at 430; *La Liberte*, 966 F.3d at 87; *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010); *Hanna v. Plumer*, 380 U.S. 460, 463–64 (1965). Thus, "'the substantial basis'" standard articulated in New York's anti-SLAPP law" "conflicts with the standards under Federal Rules of Civil Procedure 12" and "[a]s such, § 70-a is inapplicable in federal court." *Nat'l Academy*, 51 F. Supp .3d at 431-32. Consequently, Libra's New York's anti-SLAPP claim in this Court fails to state a claim and must be dismissed.

### b.   Even if Applying New York Anti-SLAPP is Permissible in This Court, It is Inapplicable Here

NY anti-SLAPP is only applicable when it protects communications in an action involving public petition or participation. The statements at issue in Ms. Lissner's defamation claim are neither. Libra's statements are only in the public sphere because she decided to trumpet private family matters to the news media in the hopes of bullying Ms. Lissner into resigning as guardian. This is made clear by her early threats to share her allegations as to Peter's guardianship with the media. (Adinolfi Decl. ¶¶ 39-41.)

Simply making something "public" does not convert a private action into one of public participation. Libra's false statements to the media at issue in the Defamation Action are related to Peter's health, his social interactions, his private life, Libra's private visits with her father, and Ms. Lissner's fees as Peter's personal needs guardian. (Warshavsky Decl. Ex. A.) Importantly, there was a Court Order to not discuss this personal information with the media to ensure that Peter's right to privacy was protected and because his family members did not wish to harm his

---

[2] The exception, violation of the Enabling Act, is inapplicable here "as the Federal Rules are presumed valid under the Constitution and the Rules Enabling Act." *Carrol*, 2022 WL 748128, at *3.

legacy. (Adinolfi Decl. ¶ 21 & Ex. C.) Libra's claim that she is part of a larger cause is an attempt to garner media attention and to benefit from the publicity of the totally unrelated conservatorship of Brittney Spears. But attempting to relate one's claim to a broader social interest does not turn such that claim into a matter of public interest.

Moreover, the Defamation Action clearly sets out a substantial basis for Ms. Lissner's defamation claim against Libra. The Defamation Action alleges the demonstrably false statements Libra made and that she made such statements knowing they were false. For example, Libra stated: (i) the guardians "have just helped themselves to his bank account" (Warshavsky Decl. Ex. A ¶ 62), yet "Libra knows that Plaintiff has neither control of nor even access to Peter Max's bank account. Libra knows that Plaintiff has never been paid <u>anything</u> for her work as guardian." (*Id.* ¶ 63); (ii) "In 2019 when she came on the very first day she took away his phone" (*id.* ¶ 56), yet, as the Defamation Complaint alleges "it is Libra who took Peter Max's phone." (*Id.* ¶ 57.) From these and other allegations found in the defamation complaint, Ms. Lissner's defamation claim clearly has a substantial basis in law.

Based on the foregoing, there is no scenario upon which Libra's NY anti-SLAPP should be sustained.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss the Complaint.

Dated: July 8, 2022

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ Oren J. Warshavsky*

45 Rockefeller Plaza
New York, NY 10111-0100
Tel.: (212) 589-4200
Fax: (212) 589-4201
Oren J. Warshavsky
Email: owarshavsky@bakerlaw.com
Tatiana Markel
Email: tmarkel@bakerlaw.com
Michelle Usitalo
Email: musitalo@bakerlaw.com

*Attorneys for Defendant Barbara H.
Urbach Lissner*