UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/3/2023
```

-------------------------------------------------------------X
LIBRA MAX,                                    :
                                 Plaintiff,   :
                                              :
                 -against-                    :         22-CV-5070 (VEC)
                                              :
BARBARA H. URBACH LISSNER,                    :         OPINION AND ORDER
                                              :
                                 Defendant.   :
                                              :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Libra Max ("Ms. Max" or "Plaintiff") has sued Barbara H. Urbach Lissner ("Lissner")[1]

for intentional and/or reckless infliction of emotional distress, violation of New York's laws

prohibiting strategic lawsuits against public participation ("anti-SLAPP"), and for violation of

New York Judiciary Law § 487.  *See* Compl. ¶ 1, Dkt. 7.  Defendant has moved to dismiss the

Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Rule

12(b)(6) for failure to state a claim.  *See generally* Def. Mot., Dkt. 13.  For the following reasons,

Defendant's Motion to Dismiss is GRANTED.

---

[1]      For reasons that are unknown, counsel for Defendant opted to refer to Ms. Lissner throughout their papers
as "Barbara."  While there could be some logic to referring to Libra Max and Peter Max as "Libra" and "Peter" as
Plaintiff's counsel did throughout their papers, the Court believes that all of the parties are entitled to the respect of
being referred to by their surnames.

### BACKGROUND[2]

Public scrutiny over state guardianship systems has increased in recent years with good reason.  Reports of abuse and exploitation by court-appointed guardians loom large, particularly on the heels of the so-called "#FreeBritney" movement.[3]  But concerns of abuse are diminished when there is a strong justification for the guardianship arrangement, such as in cases where, as here, the ward suffers from Alzheimer's disease.  Dementia exacts a significant toll on the families involved; the cost is compounded when the ward's family members are at odds with each other.  The Court acknowledges at the outset of this decision the unfortunate reality that, despite the presumably shared goal of ensuring Peter Max gets the best care possible in his final years, his caretakers and his children are unable to resolve their disagreements collegially, out of the public sphere and without court intervention.

Plaintiff Libra Max, a California citizen with a residence in Manhattan, is the daughter of famed artist Peter Max ("Max" or "Mr. Max").  Compl. ¶ 56.  Max, who has Alzheimer's, has had a court-appointed personal needs guardian since 2015.  *Id.* ¶ 38.[4]  After his second wife's

---

[2]    The facts are taken from the Complaint.  At this stage in the litigation, the Court assumes that all well-pled facts alleged in the Complaint are true.  *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted).  And, when evaluating the adequacy of a complaint, the Court may consider matters outside the pleadings — including exhibits to Defendant's Motion to Dismiss — to the extent those exhibits have been incorporated by reference into the Complaint.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted).

[3]    *See* Barbara Sprunt, *On Capitol Hill, #FreeBritney Is Just the Beginning*, NPR (Sept. 28, 2021), https://www.npr.org/2021/09/28/1041025998/on-capitol-hill-freebritney-is-just-the-beginning.

[4]    Adult guardianship proceedings in New York are governed by N.Y. Mental Hygiene Law Article 81 ("NYMHL").  At least in New York City, such proceedings are handled in the guardianship part of the New York Supreme Court.  *See* NYMHL § 81.04; *see also* https://nycourts.gov/courthelp/Guardianship/case.shtml.  A guardian can be appointed for personal needs, property or both.  *Id.* § 81.02.  In this case, approximately seven years ago Mr. Max consented to both a personal needs and property guardian.  *See* Adinolfi Decl. ¶ 9, Dkt. 17.  It appears that Mr. Max has always had separate guardians.  *See id.*  It also appears that, at least as of the last and most comprehensive opinion from the guardianship part in this case, Adinolfi Decl., Ex. F, Dkt. 17-6 (the August 7, 2020 Order), Mr. Max has not revoked his consent.  (It is entirely unclear to this Court whether Mr. Max is still competent to make such decisions and whether the judge in the guardianship part has inquired personally of Mr. Max whether he remains satisfied with the guardianship arrangement.)

death and the departure of several court-appointed guardians, on June 10, 2019, Lissner, an attorney and citizen of New Jersey, was appointed as Mr. Max's personal needs guardian.  *Id.* ¶¶ 57, 63.  Plaintiff alleges that Lissner "should never have been assigned as Peter's guardian." *Id.* ¶ 14.  In Plaintiff's view, her father's need for a personal needs guardian ended with the death of his wife, after which he "should have been afforded his clearly stated wishes to be cared for by his children at the end of his life . . . and to have his children make medical decisions for him to the extent he is unable."  Compl. ¶¶ 39, 63.[5]

Plaintiff alleges that, immediately upon her appointment, Lissner began to "isolate" Max from his family and loved ones.  Compl. ¶ 64.  Based on her belief that Lissner is not an acceptable guardian, Ms. Max has made three motions in state court over the course of the past three years seeking her removal.  *Id.* ¶ 65.[6]

In addition to allegedly isolating Mr. Max, Plaintiff alleges that Lissner has "repeatedly lied to the guardianship court about" Plaintiff and about her father's wishes, with the intent of deceiving the court into believing that Lissner's decisions regarding Max's availability for visits are acceptable to him and that Plaintiff "is a threat to her father . . . thereby justifying the continuation of [Lissner's] lucrative guardianship."  *Id.* ¶ 51; *see also id.* ¶¶ 103–08.  Plaintiff has "appropriately called public attention to Lissner's morally repugnant conduct," *id.* ¶ 16, prompting Lissner to bring a defamation suit against Ms. Max in state court, *id.* ¶ 50.  According

---

[5]    According to Elizabeth Adinolfi, the attorney who was appointed by New York Supreme Court to represent Peter Max in connection with the guardianship proceeding, the guardianship court held a *Lincoln* hearing before appointing a personal needs guardian for Mr. Max.  Adinolfi Decl. ¶¶ 6, 9.  At the *Lincoln* hearing, Mr. Max consented to the appointment of a personal needs guardian.  He told his attorney that he wanted an independent guardian so as not to exacerbate conflicts that existed between his wife and children.  *Id.* at ¶ 11.  Based on submissions in this case, it appears that the conflicts between Mr. Max's children have not abated with the death of his wife or the passage of time.  *See* Adam Max Decl., ¶¶ 4, 8–13, Dkt. 16.

[6]    The latest application, filed in September 2021, was pending in New York State Supreme Court as of the date Ms. Max filed her federal complaint.  *See* Compl. ¶ 65.

to Ms. Max, Lissner's state court complaint is "riddled with lies" and violates New York's anti-SLAPP laws.  *Id.* ¶¶ 50, 55, 62, 95, 109–110; *see also* Pl. Opp. at 9.[7]

The Complaint filed in this case is a 30-page diatribe consisting of a compendium of Ms. Max's extensive complaints about Lissner's decisions in her role as Max's guardian.  Ms. Max's complaints range from complaints about limitations on visits and telephone calls to the removal of cats from Max's home to Lissner's unwillingness to share Max's medical information with her.  Compl. ¶¶ 68(a)–(w).  In Ms. Max's telling, Lissner has responded to similar litanies of complaints lodged in the guardianship proceeding by prevaricating about Ms. Max and about Mr. Max's desires.  According to Plaintiff, Lissner is motivated by the money she receives in fees, *id.* ¶ 14, and by a desire to cause Ms. Max emotional harm, *id.* ¶ 114.

On June 17, 2022, Ms. Max filed this complaint against Lissner alleging one count of intentional or reckless infliction of severe emotional distress, one count of violating New York's anti-SLAPP laws, and one count of violating New York's Judiciary Law § 487.  She alleges that she is entitled to compensatory and punitive damages, and attorneys' fees.  *See id.* ¶ 111–26.  Defendant moves to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1),[8] Def. Mem. of Law at 9–16, and, alternatively, for failure to state a claim pursuant to Rule 12(b)(6), *id.* 17–25.

---

[7]     Lissner's defamation claim was initially brought outside of the guardianship part but was later transferred by the Administrative Judge to the guardianship part and placed under seal, a process about which Ms. Max bitterly complains.  Pl. Opp. at 9 n.4; Def. Mem. at 8.  To the extent Plaintiff believes that the actions of the "newly-appointed Administrative Judge" were improper, *see* Pl. Opp. at 9 n.4; Eilender Decl. ¶¶ 8, 12, 15–17, Dkt. 30, the appropriate forum in which to voice her complaint is the New York State Administrative Justice Coordinator.  *See* https://cjc.ny.gov/General.Information/Gen.Info.Pages/filecomplaint.html.  That Plaintiff's grievances against state court judges lie outside the purview of the federal courts is the principal message delivered by Judge Cote's recent dismissal of Ms. Max's § 1983 claim against Deborah Kaplan, the Deputy Chief Administrative Judge for the New York City Courts.  *See Max v. Kaplan*, 21-cv-6156, Dkt. 38.

[8]     Ms. Max alleges that the Court's subject matter jurisdiction is premised on diversity.  *See* Compl. ¶ 58; 28 U.S.C. § 1332.  Defendant does not dispute that the parties are diverse for § 1332 purposes.

## DISCUSSION

I.    **Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction Is Granted in Part[9]**

Lissner argues that this Court lacks subject matter jurisdiction because Plaintiff's Complaint is an attempt to obtain review of state-court orders issued in the guardianship proceeding.  Def. Mem. at 9–10 (citing *Toriola v. N. Shore LIJ*, 2009 WL 2338037, at *2 (E.D.N.Y. July 29, 2009); *Verdejo v. North Shore Assocs.*, 2009 WL 1137748, at *1 (E.D.N.Y. Apr. 27, 2009)).  Defendant further argues that the Court should abstain from exercising jurisdiction under the *Rooker-Feldman* doctrine, the domestic relations exception, *Younger*, and *Colorado River*.  Def. Mem. at 10.

### A.    Legal Standards

Defendant argues that several abstention doctrines counsel against this Court exercising jurisdiction to hear Plaintiff's claims.  *See id.*  The abstention doctrines invoked by Defendant have varying applicability.

#### 1.    *The Rooker-Feldman Doctrine*

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."  *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005).  "The doctrine is rooted in the principle that 'appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the

---

[9]    In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs."  *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).  The Court may also "consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits."  *Id.* (citations omitted).  Thus, with respect to the applicability of the abstention doctrines invoked by Defendant, the Court may look to the exhibits attached to Lissner's motion papers, including the guardianship court orders.

Supreme] Court.'" *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citing *Exxon Mobil*, 544 U.S. at 283).

To determine whether a complaint must be dismissed pursuant to *Rooker-Feldman*, a court must "look at both the allegations in the [plaintiff's] federal complaint and the records of the state-court proceedings." *Hoblock*, 422 F.3d at 88. District courts must abstain pursuant to the *Rooker-Feldman* doctrine if (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries from a state-court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state-court judgment was rendered before the district court proceedings commenced. *See Vossbrinck*, 773 F.3d at 426 (citing *Hoblock*, 422 F.3d at 85). Although "all four requirements must be met in order for *Rooker-Feldman* to act as a jurisdictional bar . . . the second requirement — that the plaintiff complains of an injury caused by a state-court judgment — is the core requirement from which the other *Rooker-Feldman* requirements derive." *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018) (cleaned up).

### 2. *Colorado River*

Notwithstanding the Court's "virtually unflagging obligation" to exercise jurisdiction over matters properly before it, under the *Colorado River* doctrine, "a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in comprehensive disposition of litigation and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (citation omitted). The doctrine is discretionary, and there is a "presumption against relinquishing jurisdiction." *Gustavia Home, LLC v. FV-1, Inc.*, 2020 WL 927579, *3 (E.D.N.Y. Feb. 26, 2020).

To determine whether abstention is appropriate pursuant to *Colorado River*, district courts must first determine whether the state and federal cases are parallel. *Id.* "Federal and state proceedings are parallel if 'substantially the same parties are contemporaneously litigating substantially the same issue[s]' in both forums." *Iacovacci v. Monticciolo*, 2019 WL 2074584, at *3 (S.D.N.Y. May 9, 2019). Proceedings are parallel when the state case claims involve the same factual allegations as those at issue in the federal case, even if the federal case includes a claim or claims not in the state case. *See id.* at *5; *Abe v. N.Y. Univ.*, 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016) ("[P]arallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." (quoting *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012))).

If the proceedings are parallel, courts evaluate six factors to determine whether exceptional circumstances warrant abstention: (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights. *Niagara Mohawk*, 673 F.3d at 100–01. "When a Court chooses to abstain pursuant to *Colorado River*, it may elect to stay actions for damages or dismiss actions seeking equitable or otherwise discretionary relief." *Tuebor Reit Sub LLC v. Paul*, 2020 WL 4897137, at *7 (S.D.N.Y. Aug. 19, 2020) (citation omitted).

### 3.  *Younger* Abstention

Alternatively, Defendant argues that *Younger* offers a basis for abstention. Def. Mem. at 15. Under *Younger*, a federal court must, in certain circumstances, decline to adjudicate a case

properly before it in the interest of "comity and federalism." *Younger v. Harris*, 401 U.S. 37, 43–45 (1971).  The Second Circuit has established a three-part test for determining whether *Younger* abstention is warranted: (1) whether a state proceeding is pending at the time the federal litigation is commenced, (2) the magnitude of the state's interest in adjudicating the matter, and (3) whether the plaintiffs are able to raise the same claims raised in the federal action in the state forum.  *Thomas v. New York City*, 814 F. Supp. 1139, 1149 (E.D.N.Y. 1993) (citing *Christ the King Reg'l High Sch. v. Culvert*, 815 F.2d 219, 224 (2d Cir. 1987)).

"*Younger* abstention focuses primarily on federal courts interfering with and disrupting ongoing state proceedings."  *Jones v. Cnty. of Westchester*, 678 F. App'x 48, 50 (2d Cir. 2017).  Accordingly, *Younger* abstention cannot be used as a basis to decline jurisdiction in an action that seeks only money damages.  *See Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 196 n.2 (2d Cir. 2002) (noting that in the Second Circuit, it is "well established that *Younger* abstention is inappropriate on a claim for money damages"); *Rivers v. McLeod*, 252 F.3d 99, 101–02 (2d Cir. 2001) (same); *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) (holding that "abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and [the Court] would dismiss otherwise identical claims for declaratory and injunctive relief").  Thus, the Supreme Court has narrowed the application of the *Younger* doctrine to ongoing state criminal proceedings, certain civil enforcement proceedings that are akin to criminal prosecutions, and certain orders (such as contempt orders) that are "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73, 78 (2013).

### 4.    The Domestic Relations Exception

Lissner also cites the domestic relations exception as a doctrine counseling against jurisdiction in this case.  That exception is exceedingly narrow: it applies to "divorce, alimony,

and child custody decrees," which are domestic disputes that belong to the courts of the states.

*See King v. Comm'r & N.Y.C. Police Dep't*, 60 F. App'x 873, 875 (2d Cir. 2003) ("[E]ven under

the broadest interpretation of the [domestic relations] exception, it applies only to cases that seek

issuance or modification of divorce, alimony, or child custody decrees."); *Schottenstein v.*

*Schottenstein*, 2004 WL 2534155, *8 (S.D.N.Y. Nov. 8, 2004) (refusing to apply the domestic

relations exception to "tort claims" that did not "seek the issuance or modification of an existing

custody order"); *see also Tait v. Powell*, 241 F. Supp. 3d 372, 376–77 (E.D.N.Y. 2017)

("Because it is limited to divorce, alimony, and child custody decrees, the domestic relations

exception is undeniably very narrow in its focus.").

Notably, Lissner has not pointed the Court to any cases in this circuit that have relied on

the domestic relations exception to hold that a federal district court lacks jurisdiction over a case

that is related to an adult guardianship proceeding.

### B.    The Court Lacks Jurisdiction Over Plaintiff's IIED Claim

Because Ms. Max's IIED claim fits squarely within the *Rooker-Feldman* doctrine's

jurisdictional bar, Defendant's motion to dismiss it is granted.

Defendant argues that the Complaint is a transparent effort to have the Court review and

reject the results of the ongoing guardianship proceeding pursuant to which Lissner has been

appointed as Max's personal needs guardian. *See* Def. Mem. at 11. Judges in that proceeding

have heard the same complaints about Lissner's actions and have repeatedly upheld Lissner's

decisions. *See id.* Plaintiff counters that her claims are "independent from any claims raised in

the guardianship court," and thus the Court has jurisdiction to adjudicate them. Pl. Opp. at 7

(citing *Walker v. Feller*, 2005 WL 1971862, at *4 (E.D.N.Y. Aug. 16, 2005)). Plaintiff argues

that she does not seek review of the guardianship proceeding or any decisions made by the

guardianship court; rather, she seeks monetary damages as a result of Lissner's conduct, which,

"[a]t best, the guardianship court orders 'ratified, acquiesced in, or left unpunished.'"  *Id.* at 6–7

(quoting *Hoblock*, 422 F.3d at 88; *Dorce v. City of N.Y.*, 2 F.4th 82, 106 (2d Cir. 2021)).

Accordingly, Plaintiff argues that there is no basis to decline jurisdiction because the *Rooker-*

*Feldman* doctrine requires abstention only if "the state court's decision *caused the injuries* in the

case at bar."  *Id.* at 6 (emphasis in original) (citing *Hoblock*, 422 F.3d at 88).

    Even a cursory reading of the Complaint reveals the disingenuousness of Plaintiff's

argument.  The gravamen of Plaintiff's complaint is that Lissner, as Mr. Max's personal needs

guardian, has intentionally or recklessly inflicted emotional distress on Ms. Max by, *inter alia*,

imposing restrictions on Plaintiff's ability to visit Mr. Max, removing Mr. Max's cats from his

home, and preventing Plaintiff from intervening in, or being apprised of, decisions related to her

father's medical care and treatment.  *See generally* Compl. ¶¶ 111–16 (the "IIED claim").  But

all of those actions are the product of multiple state-court orders that have been entered in the

guardianship proceeding or are actions by Lissner that have been expressly approved by the

judges in those proceedings.[10]  *See, e.g.*, Adinolfi Decl. ¶¶ 30–37, Exs. D, F, H, Dkt. 17.

Plaintiff has, without success, moved to terminate Lissner as her father's personal needs guardian

three times over the course of Lissner's tenure, making nearly identical allegations to those in her

federal complaint.[11]  *See* Compl. ¶ 65; Adinolfi Decl. ¶ 31.

---

[10]    In support of her jurisdictional arguments, Lissner submitted copies of several state-court orders entered in the guardianship proceeding.  *See, e.g.*, Adinolfi Decl. ¶¶ 30–37; Exs. D, F, H, Dkt. 17.  Because this Court's subject matter jurisdiction is at issue, the Court is permitted to consider materials outside the pleadings, *see supra* n.2, and may take judicial notice of the prior court orders in the guardianship proceeding, *see Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 166 n.3 (2d Cir. 2012) ("We may 'take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.'" (quoting *Glob. Network Commc'ns, Inc. v. City of N. Y.*, 458 F.3d 150, 157 (2d Cir. 2006))).

[11]    According to the Complaint, Plaintiff made motions in the guardianship proceeding in September 2019, May 2020, and September 2021, with the latest application still pending.  Compl. ¶ 65; *see also* Pl. Opp. at 7 (stating one motion "was never considered; one was denied; and one remains pending").

On September 25, 2019, after hearing oral argument on Ms. Max's application to remove Lissner as Max's guardian (or, at a minimum, to modify the visitation schedule established by Lissner), the guardianship court denied Ms. Max's request and ordered that "the schedule for [Mr. Max] with the personal needs guardian, Barbara Lissner, Esq., . . . is to be followed without any interference or interruption by family and/or friends"; that Lissner "is the sole person who is authorized to provide direction to home care aides or any other parties hired to provide care services to [Max]"; that visitation with Max is "to be arranged" with Lissner; and that Ms. Max must provide Lissner "advance notice of visits, similar to [the] practice by [Max's ] son Adam Max." Ex. D at 4–5, Dkt. 17-4; Adinolfi Decl. ¶ 28.

Subsequent decisions of the guardianship court repeatedly approved the visitation schedule established by Lissner, deeming "reasonable and appropriate" the restrictions Lissner established, including the requirement that Plaintiff "inform [Lissner] of her specific plans in advance and may visit with [her father] between the hours of 2:30pm and 7:30pm on Saturdays, Mondays, and Thursdays." Ex. I at 1–2, Dkt. 17-9 (July 17, 2020 order denying Ms. Max's motion to modify visitation); *see also* Ex. H, Dkt. 17-8 (June 22, 2020 email from Justice Kelly's law clerk confirming that "the duration of the visits are at the discretion of [Lissner]," who "remains in the position to determine what is reasonable in terms of visitation duration").

Ms. Max made her second attempt to terminate Lissner as her father's guardian in May 2020 in a pleading that is substantially similar to the complaint filed in this court. *See generally* Ex. G, Dkt. 17-7. Ms. Max argued to the guardianship part that Lissner intentionally interfered with her "freedom of intimate association" with her father, failed to act in Max's best interest by "failing to consult" with Plaintiff regarding medical decisions affecting Max, by "isolating [Max] from his family and friends," and by "limiting" Ms. Max's contact with her father. Ex. F at 5–6, 14, Dkt. 17-6 (August 7, 2020 Order). The guardianship court disagreed with Ms. Max's

accusations.  The court rejected Ms. Max's accusation that Lissner isolated Max, noting that

"there have been multiple court orders clearly outlining the procedures for visitation," including

by "setting times [Max] would be available to answer his phone" to speak with friends or family.

*Id.* at 7.  The court thus found baseless Ms. Max's "alleged inability to call her father whenever

she wants," as that issue had been "conferenced extensively before this court and the court is

satisfied that [Mr. Max] may answer or not answer his phone as he sees fit." *Id.* at 7, 9.  The

guardianship court also reviewed video evidence that Ms. Max submitted to support her claims

that her visits with her father were under constant surveillance; the court found otherwise, noting

that Ms. Max's "visits [with Max] are completely unencumbered." *Id.* at 14.  Finally, the court

endorsed Lissner's decision to remove Max's cats due to Max's heightened "risk of falling" and

the "considerable time" spent by aides caring for the cats in place of their other duties. *Id.* at 7.

In sum, not only has the guardianship court explicitly considered and repeatedly rejected

Plaintiff's claims, but it has issued several orders requiring adherence to Lissner's directives as

Mr. Max's personal needs guardian.

Ms. Max argues, however, that the *Rooker-Feldman* doctrine does not apply because she

seeks relief based on Lissner's "personal actions," not to "attack[] judgments issued by the

guardianship court, or the existence of the guardianship."  Pl. Opp. at 7.  But "a federal suit is not

free from *Rooker-Feldman*'s bar simply because the suit proceeds on legal theories not addressed

in state court."  *Hoblock*, 422 F.3d at 87.  The gestalt of Ms. Max's IIED claim focuses on

alleged injuries caused by Lissner as she executed the state court's order appointing her as Max's

personal needs guardian.  *See Charles v. Levitt*, 716 F. App'x 18, 21–22 (2d Cir. 2017)

(summary order) (affirming district court's application of the *Rooker-Feldman* doctrine where

plaintiff's alleged damages "manifest[ed] a singular focus on allegedly wrongful actions related

to the state court's imposition and execution of [a] receivership"); *Gifford v. United N. Mortg.*

*Bankers, Ltd.*, 2019 WL 2912489, *6 (S.D.N.Y. July 8, 2019) ("Although plaintiff claims her

damages are for 'emotional distress' and expenses incurred in defending the [state-court]

foreclosure action, such injuries, assuming they exist, were 'directly caused by the adverse

judgment' . . . and, thus, are barred by the *Rooker-Feldman* doctrine."); *see also Publicola v.*

*Lomenzo*, 2022 WL 1027099, *9 (N.D.N.Y. Apr. 5, 2022), *appeal dismissed* 54 F.4th 108 (2d

Cir. 2022) (barring a § 1983 claim for money damages under *Rooker-Feldman* "where the relief

sought [was] tied directly to the injury allegedly caused by the adverse state-court judgment").[12]

The substance of each of the guardianship court's orders is clear that the actions and

decisions of Lissner about which Plaintiff complains are reasonable and appropriate given her

role as Max's guardian, including her decisions about visitation, the cats, and Mr. Max's medical

care. *See* Ex. I at 1–2; *see also* Ex. H.[13]  By alleging that the very decisions approved by the

guardianship court constitute the tort of IIED against Plaintiff, Plaintiff runs afoul of *Rooker-*

*Feldman*: she "(i) invites district court review and rejection of state court judgments that were

(ii) rendered before this Action commenced, (iii) with respect to which [s]he is the losing party,

---

[12]      Plaintiff cites *Francis v. City of New York*, 197 F. App'x 26, 29 (2d Cir. 2006), and *Walker v. Feller*, 2005
WL 1971862, *5 (E.D.N.Y. Aug. 16, 2005), for the proposition that there is jurisdiction because her federal
complaint raises an independent cause of action. *See* Pl. Opp. at 7.  Those cases, however, are inapposite.  In
*Francis*, the lower court erred when it declined to exercise jurisdiction under *Rooker-Feldman* despite the plaintiffs'
cognizable, independent cause of action that the city removed their children from their home based on a city
employee's discriminatory motive. *See Francis*, 197 F. App'x at 28–29.  Although the plaintiffs in that case took
umbrage with the state court's decision to remove their children, they nonetheless raised a separate, independent
cause of action based on the plaintiffs' "right not to be deprived of liberty" as a result of bad state actors. *Id.* at 29
(citing *Zahrey v. Coffey*, 221 F.3d 342, 344 (2d Cir. 2000)).  *Walker* is of no help, either.  That court held that the
plaintiff's "allegation that NYCHA violated federal law by failing to promptly pursue a non-payment action for over
two years . . . presents a claim that is independent of any injury caused by the state court's judgment," because the
complaint "may state a colorable federal claim [under federal law that] requires local public housing authorities to
develop 'sound and efficient management programs and practices to assure the prompt payment and collection of
rents.'" *Walker*, 2005 WL 1971862 at *5.  Here, Plaintiff does not allege an independent, federal cause of action.
*See id.* n.3 ("Although Mr. Walker's claim that SHCS failed in its guardianship duties to him is also independent of
the state court's judgment, the Court lacks subject-matter jurisdiction over this claim, which alleges only a violation
of state law.").

[13]      The Court further notes that Plaintiff failed to appeal the state court's August 7, 2020 order.  Def. Mem. at
7.  Any appeal of that decision could have, and should have, been brought in state court.

and (iv) complaining of injuries that resulted from such judgments." *Fishman v. Off. of Ct. Admin. N.Y.S. Courts*, 2020 WL 1082560, at \*9 (S.D.N.Y. Mar. 5, 2020), *aff'd*, 2021 WL 4434698 (2d Cir. Sept. 28, 2021).  Because the adjudication of Plaintiff's IIED claim would essentially put this Court in the position of second guessing the decisions of the guardianship court — a position that the *Rooker-Feldman* doctrine forbids, *Hoblock*, 422 F.3d at 87 — the Court lacks jurisdiction over Plaintiff's IIED claim.  Defendant's motion to dismiss that claim with prejudice is granted.[14]

## II.   Defendant's Motion to Dismiss the Remaining Claims for Failure to State a Claim Is Granted

Plaintiff's remaining claims — her Judiciary Law claim and anti-SLAPP claim — may very well fit within one of the abstention doctrines cited by Defendant, *see generally* Def. Mem. at 16, as they involve, in many respects, allegations or claims that are embroiled in the guardianship proceeding.[15]  Lissner alternatively moves to dismiss the complaint for failure to state a claim.  *Id.* at 18–24.[16]  Because the abstention issues relative to these two claims are not easily resolved and because it is apparent that the Complaint fails to state a claim, the Court resolves the motion to dismiss the last two claims on Rule 12(b)(6) grounds.  *See, e.g.*, *Homere*

---

[14]      Because the Court finds that the *Rooker-Feldman* doctrine bars Ms. Max's IIED claim, it need not determine whether any of the remaining abstention doctrines invoked by Defendant applies.

[15]      *See, e.g.*, Warshavsky Decl., Ex. B at 10, Dkt. 15-2 (asserting anti-SLAPP defense in Ms. Max's Answer to Lissner's defamation claim); Ex. G ¶¶ 9, 11, 12 (declaration in support of Ms. Max's motion to terminate the guardianship asserting that Lissner "has absolutely no basis to make any accusations"; "has lied to this court about [Ms. Max]"; and "gone out of her way to demonize [Ms. Max] with false accusations").

[16]      In addition to challenging the adequacy of the pleadings, Defendant also argues that Ms. Max fails to state a claim because Lissner is entitled to quasi-judicial immunity from suit.  *See* Def. Mem. at 17–18.  But the cases Defendant cites to support the extension of judicial immunity to court-appointed actors all fell within the context of § 1983 claims, not run-of-the-mill tort claims like the ones presented here.  *See, e.g.*, *Galanova v. Portnoy*, 432 F. Supp. 3d 433 (S.D.N.Y. 2020); *Faraldo v. Kessler*, 2008 WL 216608 (E.D.N.Y. Jan. 23, 2008); *Yapi v. Kondratyeva*, 340 F. App'x 683 (2d Cir. 2009); and *Bartolini v. Mongelli*, 2018 WL 6338771 (E.D.N.Y. Dec. 4, 2018).

*v. Hempstead*, 322 F. Supp. 3d 353, 368–69 (E.D.N.Y. 2018) (deciding the sufficiency of plaintiff's claims given the uncertainty of whether abstention would be appropriate).

　　To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The complaint need not "contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Similarly, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in *Iqbal*).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

A.      The Anti-SLAPP Claim[17]

As relevant here, New York's so-called "anti-SLAPP" law has an impact on defamation cases brought based on statements made publicly in connection with an issue of public interest in two ways.  N.Y. Civ. Rights Law ("NYCRL") §§ 70-a, 76-a; N.Y. C.P.L.R. ("CPLR") §§ 3211(g), 1312(h).  First, it creates a cause of action for the defamation defendant if the defamation plaintiff commenced or continued the defamation lawsuit without a substantial basis in fact.[18]  Second, it imposes on the defamation plaintiff an actual malice standard in order to prevail on the defamation claim.  NYCRL § 76-a (2).

Plaintiff alleges that Lissner violated New York's anti-SLAPP provisions by suing her for defamation in state court.  *See* Compl. ¶¶ 95–102; Ex. A to Warshavsky Decl., Dkt. 15-1 (the "Defamation Complaint").  Specifically, Ms. Max alleges that New York's anti-SLAPP statute forbids Lissner from maintaining her defamation claim in state court because the suit is based on Plaintiff's "public critique" of Lissner's performance as a court-appointed guardian "in the context of a guardianship system that is currently under nationwide scrutiny."  *See* Compl. ¶ 96.  Accordingly, Plaintiff claims, Lissner violated the anti-SLAPP law, entitling Plaintiff to "compensatory and punitive damages, in addition to costs and attorneys' fees," because Lissner's defamation lawsuit was "commenced without a substantial basis in fact and law" and "for the

---

[17]      Ms. Max purports to state a claim under N.Y. Civ. Rights Law ("NYCRL") § 76-a.  *See* Compl. ¶¶ 118. That provision, however, merely describes the circumstances under which "actual malice" must be proven to prevail in a lawsuit that is covered by the anti-SLAPP provision.  *See* NYCRL § 76-a(2).  The statutory basis for an affirmative anti-SLAPP claim resides in NYCRL § 70-a, which provides that a "defendant in an action involving public petition and participation . . . may maintain an action, claim, cross claim, or counterclaim to recover damages . . . from any person who commenced or continued such action, provided that" the action "was commenced or continued without a substantial basis in fact and law. . . ."  The Court will construe this case as having been brought under NYCRL § 70-a.

[18]      In relevant part, NYCRL § 70-a (1)(a) establishes a cause of action for a defamation defendant in an action based on statements made in connection with a matter of public interest if the action "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law."  The Court focuses on the element of the defamation claim being "without a substantial basis in fact" because that appears to be the theory of Ms. Max's claim.

sole purpose of harassing, intimidating, punishing, or otherwise maliciously inhibiting"
Plaintiff's free speech rights.[19]  Compl. ¶¶ 119–21.

Lissner relies on cases that are inapplicable to argue that Plaintiff's anti-SLAPP claim
cannot proceed in federal court.  Def. Mem. at 22–24.  Plaintiff's cause of action is
distinguishable from cases in which a defamation defendant in federal court asserts an anti-
SLAPP defense to the federal court defamation complaint and attempts to invoke the heightened
pleading standard that is part of New York's anti-SLAPP provisions.  Because the heightened
pleading standards run counter to the federal rules, they cannot be invoked procedurally in
federal court.  *See Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
551 F. Supp. 3d 408, 430 (S.D.N.Y. 2021) (finding, as a  matter of first impression, that New
York's anti-SLAPP pleading standard, which places the burden on a plaintiff to "demonstrate[]
that the cause of action has a substantial basis in law," runs counter to the pleading standards in
Federal Rules of Civil Procedure 12 and 56); *see also Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d
547, 567 n.11 (S.D.N.Y. 2022) (same); *Carroll v. Trump*, 590 F. Supp. 3d 575, 582–85
(S.D.N.Y. 2022) (same); *Kesner v. Buhl*, 590 F. Supp. 3d 680, 700–01 (S.D.N.Y. 2022) (same),
*appeal filed*, No. 22-875.  But those cases do not stand for the proposition that the federal courts
cannot entertain a claim that a defamation plaintiff violated the substantive state law by
commencing a defamation lawsuit in state court based on statements made in connection with an
issue of public interest without a substantial basis in fact and law.

Although Plaintiff can bring her anti-SLAPP claim in federal court, the Court finds that
she has failed adequately to plead such a claim.  For Plaintiff to state an affirmative cause of

---

[19]     New York's anti-SLAPP provision permits defamation defendants to obtain additional recovery, including
compensatory and/or punitive damages, if they prove that the defamation action was commenced with the "purpose"
or "sole purpose" of "harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of
speech, petition or association rights."  *See* NYCRL § 70-a(1)(b)–(c).

action based on Lissner's Defamation Complaint, she must allege facts from which this Court

can plausibly infer that the Defamation Complaint (a) is based on a publicly made statement

involving an issue of public interest; and (b) was commenced without a substantial basis in fact

and law.  NYCRL § 70-a(1)(a); *Iqbal*, 556 U.S. at 678.[20]

Plaintiff has adequately alleged that Lissner's Defamation Complaint is subject to the

anti-SLAPP law because the statements by Ms. Max about which Lissner complains relate to a

matter of public interest.[21]  Plaintiff's anti-SLAPP claim founders on the second element.

Plaintiff has not adequately alleged that Lissner did not have a substantial basis in fact to sue her

for defamation.  Plaintiff alleges that the alleged defamatory statements were "either true, are

statements of opinion, and/or are too loose, figurative, hyperbolic or otherwise incapable of a

defamatory meaning."  Compl. ¶ 97; *see also id.* ¶ 50 ("[Plaintiff's] statements were absolutely

privileged as a 'fair and true report' of the guardianship proceeding.").  Although Plaintiff

alleges that the Defamation Complaint is "frivolous" and "riddled with lies," *id.* ¶¶ 50, 109(a)–

(h), she fails to connect those blunderbuss assertions to the actual statements Lissner alleges are

---

[20]     By predicating this claim on the Defamation Complaint that was filed in state court, Compl. ¶ 50, Plaintiff
incorporated that complaint by reference into her complaint.  The Court is, therefore, permitted to consider the
Defamation Complaint, which Lissner provided as an exhibit to her motion to dismiss, when deciding the motion.
*See DiFolco*, 622 F .3d at 111.

[21]     To state a defamation claim in an action involving public petition and participation, a defamation plaintiff
must plead "plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that
discovery will reveal evidence of actual malice."  *Jacob v. Lorenz*, 2022 WL 4096701, *7 (S.D.N.Y. Sept. 7, 2022)
(citing *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015)).

defamatory.[22]  It is not clear to the Court which of the alleged defamatory statements Ms. Max asserts are true, which she asserts are statements of opinion, and which she asserts are incapable of a defamatory meaning.  There are also no allegations from which the Court can plausibly infer that Lissner lacked a substantial basis in fact to bring the Complaint.[23]

In short, Plaintiff's anti-SLAPP claim is conclusory.  It lacks any factual allegations from which the Court can plausibly infer that Lissner has violated New York's anti-SLAPP law by bringing a defamation claim that lacks a substantial basis in fact and law.  Accordingly, Plaintiff's anti-SLAPP claim is dismissed.  If Plaintiff can, consistent with Rule 11, Fed. R. Civ.

---

[22]     Lissner alleges that the following statements made directly (and indirectly) by Ms. Max are false and defamatory:

   (i)     "[Peter Max's] loved ones are pleading for Peter to be set free claiming that he's been isolated and drained financially by his guardian."  Defamation Complaint ¶¶ 50–51.
   (ii)    "No one has been allowed" into Mr. Max's house for two-and-a-half years "[b]ecause isolation enables financial exploitation and that's the simple answer.  You can't financially exploit someone if there's oversight."  *Id.* ¶¶ 52–53.
   (iii)   In reference to Lissner: "When there are ethical people stepping into that role the [guardianship] system works.  [A prior guardian] resigned in 2019 and Barbara Lissner came in and when somebody who is not ethical, doesn't have the right motives steps in, there's no oversight."  *Id.* ¶¶ 54–55.
   (iv)    "In 2019 when [Lissner] came on the very first day she took away [Mr. Max's] phone" and would not let a supposed friend "or anyone else see him for 10 months. . . . They took away his cats," and "[i]t is truly torture to be socially isolated at 84."  *Id.* ¶ 56.
   (v)     Ms. Max: "But they have just helped themselves to his bank account."  Host: "So, meanwhile his bank account is depleting with this guardianship.  Do you have any idea where it is right now?"  Ms. Max: "Well, again, my motivation is not money I'm not getting any money for doing this. . ."  *Id.* ¶¶ 62–63.
   (vi)    "It's about my father's constitutional and human rights.  This is a human rights violation.  It's actually human trafficking."  *Id.* ¶ 64.

*See also id.* ¶ 67 (alleging some of the above-referenced statements were also made to a reporter from the New York Post and White Hot Magazine).

[23]     Plaintiff points to certain of the allegations in the Defamation Complaint as "outright lies," *see* Compl. ¶ 109, but the allegations Plaintiff references have nothing to do with the alleged defamatory statements that are the subject of Lissner's Defamation Complaint.

P., shore up her anti-SLAPP claim, she may seek leave to file an Amended Complaint limited to

that claim.[24]

### B.        The New York Judiciary Law Claim

Ms. Max also alleges that Lissner, in her capacity as an attorney, violated New York

Judiciary Law § 487 when she lied with intent to deceive the state court and the parties during

the course of the guardianship proceeding.  *See generally* Compl. ¶¶ 51, 103–10.  First, Ms. Max

alleges that Lissner intentionally deceived the guardianship court relative to whether Ms. Max

poses a threat to her father and about Max's wishes.  *Id.* ¶ 51.  Ms. Max also alleges that Lissner

was untruthful regarding the number of billable hours for which Lissner is entitled to

compensation as Max's guardian.  *Id.* ¶ 108.  Ms. Max further alleges that Lissner's pending

defamation claim against her is "riddled" with factual allegations that are untrue, *id.* ¶¶ 109–10,

and that, as a result, Ms. Max has "incurred an obligation to pay millions of dollars in legal fees

---

[24]        The Court should note, however, that even if Ms. Max can adequately allege a standalone claim under CPLR § 70-a, the Court will likely abstain on *Colorado River* grounds and stay this case.  Plaintiff's anti-SLAPP claim is undoubtedly parallel to Lissner's defamation claim in state court.  Although "[p]erfect symmetry of parties and issues is not required" for *Colorado River* abstention, *Abe*, 2016 WL 1275661 at *6, the parties here are in fact identical, and Plaintiff's anti-SLAPP claim was asserted as an affirmative defense in the defamation proceeding, creating "a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case," *Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 597 (S.D.N.Y. 2013) (citation omitted).  Further, the *Colorado River* factors, on balance, counsel in favor of abstention: although there is no res involved, and the federal forum, which is almost within a stone's throw of the state courthouse, presents an equally convenient forum for the parties; "[t]he danger of piecemeal litigation is the 'paramount consideration' in the abstention analysis." *Sitgraves v. Fed. Home Loan Mtg. Corp.*, 265 F. Supp. 3d 411, 414 (S.D.N.Y. 2017) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983)).  The very purpose of abstention in such cases is to avoid "inconsistent and mutually contradictory determinations" in federal and state actions between the same parties. *Sitgraves*, 265 F. Supp. at 414 (quoting *Jenkinson v. Baptiste-Bruno*, 2016 WL 7377234, *4 (S.D.N.Y. Dec. 20, 2016)).  This factor is particularly instructive here where Ms. Max's anti-SLAPP claim is asserted as a defense in the defamation suit.  *See id.* ("Avoidance of piecemeal litigation weighs in favor of abstention where a party's claims in the federal action 'can and should be handled as a defense to the [state-court] claim.'" (quoting *Bromfield v. Lend-Mor Mortg. Bankers Corp.*, 2016 WL 632443, *5 (D. Conn. Feb. 17, 2016))); *Schonberger v. Serchuk*, 742 F. Supp. 108, 117 (S.D.N.Y. 1990) (holding *Colorado River* abstention appropriate in legal malpractice suit where plaintiff raised as defenses in the state action claims identical to those contained in the federal malpractice suit, and state court's resolution of plaintiff's defenses would have collateral estoppel effect in the federal action).

to refute Lissner's lies," *id.* ¶ 125.  Assuming without deciding that the Court has jurisdiction to

hear Plaintiff's Judiciary Law claim,[25] it nonetheless fails as a matter of law.

New York Judiciary Law § 487 imposes civil liability on any attorney who, in his or her

role as an attorney, "[is] guilty of any deceit or collusion, or consents to any deceit or collusion,

with intent to deceive the court or any party."  N.Y. Judiciary Law § 487; *Tacopina v. Kerik*,

2016 WL 1268268, *5 (S.D.N.Y. Mar. 31, 2016).  "The mere fact that a wrongdoer is an

attorney is insufficient to impose liability for treble damages under Section 487."  *Tacopina*,

2016 WL 1268268 at *5.

Plaintiff's claim that Lissner was operating as an attorney in the guardianship proceeding

by virtue of her submission of affirmations in lieu of affidavits, Compl. ¶¶ 103–04, strains

credulity.  Moreover, case law confirms Defendant's position that, even if Lissner were acting in

her capacity as an attorney representing a client, a plaintiff cannot bring a claim pursuant

to § 487 predicated on statements made in a prior proceeding if the plaintiff was "aware that a

lawyer [was] violating § 487 at the time the violation occur[red];" in such a case, "the victim's

exclusive remedy is to bring an action in the course of that same proceeding."  *Sanchez v.*

*Abderrahman*, 2012 WL 1077842, at *12 (E.D.N.Y. Mar. 30, 2012) (citing *Seldon v. Bernstein*,

2010 WL 3632482, at *2 (S.D.N.Y. Sept. 16, 2010)); *see also Yalkowsky v. Century Apartments*

*Assocs.*, 626 N.Y.S.2d 181, 182–83 (1st Dep't 1995); *but see Chevron Corp. v. Donziger*, 871 F.

Supp. 2d 229, 261–62 (S.D.N.Y. 2012) (distinguishing *Seldon* and *Yalkowsky* as standing for the

narrower proposition that one may raise a subsequent Section 487 claim if "its essential purpose

---

[25]     The first two categories of Lissner's alleged misrepresentations — that Lissner lied during the guardianship
proceeding to maintain her continued appointment, and that she misrepresented billable hours — could very well fall
within *Rooker-Feldman*'s bar, as they could be reasonably interpreted as complaints of injury caused by the
guardianship court's decision to deny Ms. Max's motion to terminate Lissner's appointment.  *See supra*, Part I(B).
The third category of Plaintiff's § 487 claim, alleging falsehoods in Lissner's defamation complaint, implicates
*Colorado River* abstention.  *See supra* n.24.

is not to collaterally attack the judgment in the action in which the violation was committed," or if "the alleged perjury or fraud in the underlying action was merely a means to the accomplishment of a larger fraudulent scheme.").

Here, all of the statements about which Plaintiff complains were either (1) made during a proceeding in the guardianship part in which Plaintiff participated, or (2) appear in the Defamation Complaint which is pending in the guardianship part and in which Plaintiff is actively participating.  Accordingly, pursuant to settled law, she must bring this Judiciary Law § 487 claim in the guardianship part.[26]

## CONCLUSION

For the foregoing reasons, Barbara Lissner's Motion to Dismiss is GRANTED.  As to Plaintiff's anti-SLAPP claim, any motion for leave to file an Amended Complaint must be made on or before **March 17, 2023**.  The Clerk of Court is respectfully directed to terminate docket entry 13.

**SO ORDERED.**

Date:  **March 3, 2023**                    **VALERIE CAPRONI**
       **New York, New York**               **United States District Judge**

---

[26]     It appears Ms. Max is already poised to raise her Judiciary Law claim in that court, as Ms. Max's Answer to Lissner's Defamation Complaint asserts that "Lissner's claim is barred because the allegations in her Complaint are false and groundless and her action is frivolous, entitling [Ms. Max] to sanctions . . . and [Ms. Max] reserves the right to seek attorneys' fees and costs under any other applicable statute."  Warshavsky Decl., Ex. B at 12 (Dkt. 15).